DELMER R. WORKMAN

*v.*

WORKMEN'S COMPENSATION COMMISSIONER

*and* ARMCO STEEL CORPORATION

(No. 13874)

Decided July 15, 1977.

*Jack L. Hickok* for appellant.

*Shaffer, Theibert & Ikner, Gordon T. Ikner, Jr.* for appellees.

MCGRAW, JUSTICE:

Delmar R. Workman, a workmen's compensation claimant, appeals from the final order of the Workmen's Compensation Appeal Board, dated January 27, 1977, which

affirmed the March 18, 1976, order of the Workmen's Compensation Commissioner holding that no permanent partial disability resulted to claimant from his coal mine injury on November 4, 1968. While employed as a roof bolt machine operator by Armco Steel Corporation, a piece of rock fell from the mine rib, striking the right side of his head and causing a 5-inch laceration. His application for workmen's compensation was filed December 5, 1968. The employer's report on the accident was filed December 12, 1968. Claimant was awarded total temporary disability compensation for 67-2/7 weeks. His claim was closed as of July 23, 1970. By the Commissioner's letter of November 13, 1970, he was denied a permanent partial disability compensation award. Upon claimant's protest of the ruling, his claim was set for hearing some seventeen times during the next five years before being submitted for decision on the record on February 18, 1976. At several of the set hearings claimant failed to appear, either in person or by counsel. The Appeal Board's order of January 27, 1977, affirming the Commissioner's ruling of March 18, 1976, denying a permanent partial disability compensation award, is now before the Court for review.

Counsel for the appellant and the appellees state the issues in differing language, but the two emerging issues for determinative decision and disposition are (1) whether the Appeal Board's final decision, on the record, is correct or clearly wrong, and (2) whether claimant's drug dependency, addiction to Percodan, has resulted from authorized treatment for a compensable injury and has become a compensable disability under provisions of the workmen's compensation law.

Claimant's attorney reasons that the "Appeal Board was clearly wrong to reject uncontroverted evidence showing the direct relationship between the compensable injury and the petitioner's drug dependency."

Counsel for the employer reasons that the "Workmen's Compensation Commissioner considered all of the evidence and found no disability related to drug addiction.

The Appeal Board considered the evidence and wholly independent of the Commissioner's findings, and found no drug addiction." He says the "Commissioner and the Appeal Board were absolutely correct in their factual determinations ... and the Court is ... obliged not to disturb these orders."

Some basic rules and principles may be restated. Workmen's compensation statutes are remedial and are to be liberally construed in favor of claimants for workmen's compensation benefits. In the adjudication of such claims, evidence is to be construed liberally in favor of the claimant. The Workmen's Compensation Appeal Board, a statutory administrative agency, is a fact finding body. Its findings and rulings on questions of fact will not be reversed by this Court unless clearly wrong. *Johnson v. State Workmen's Compensation Commissioner*, ____ W. Va. ____, 186 S.E.2d 771 (1972). W. Va. Code 23-5-4a.

Claimant was injured in a mine accident on November 4, 1968, and was awarded temporary total compensation benefits for 67-2/7 weeks. His testimony indicates he worked in the coal mines some eight or nine years. Following his accident, he worked five or six months in the mines but now claims his disability prevents further employment. Some years before his accident, he had a "fatty tumor" removed from his stomach and at another time he had treatment for a rock dust infection on the back of his neck. Subsequent to his accident and during treatment therefor, he applied for disability Social Security benefits. His testimony indicates he was referred to Dr. Richard D. Kitching, a psychiatrist. He states he is now receiving Social Security benefits on psychiatric bases. His claim for permanent workmen's compensation disability has been pending for over six years. Some fourteen doctors are shown by the record to have been in some manner involved in his claim. Reports of x-ray examination show no bone injury. He has been fitted for glasses. Four of the doctors saw no reason why he could not return to work. However, claimant says he is unable to work. His nerves bother him. He had been wearing a

head traction collar for about five hours each day. He reports that when he tries to work "I feel like I'm going to blow up. My blood pressure shoots up." In his testimony he states he has been taking Percodan pills for some five years. He says the pills were prescribed by "Dr. Wallace and Uy" and that "Dr. Kuhn is the one started giving me these Percodans—this dope." Dr. Leslie J. Borbely, in his letter report of June 20, 1973, states claimant "has a permanent-partial disability as a result of the accident of November 4, 1968 from a psychiatric standpoint and would estimate the disability to be 80%." In his testimony, on cross-examination, Dr. Borbely associates "at least forty-five percent" of the disability with the accident of November 4, 1968. His diagnostic impression of the claimant is "Pseudoneurotic schizophrenia with overlay of anxiety neurosis, conversion features, and depressive symptomatology."

Following Dr. Borbely's written report of June 20, 1973, and his testimony on October 23, 1973, claimant was examined by Dr. Charles C. Weise whose written report of February 18, 1974, expresses the view that "Mr. Workman does not have a schizophrenic illness ... and does not have any organic brain impairment as might be produced by a past head injury." His tentative diagnosis is "Passive-Dependent Personality with associated dependence on Percodan." Claimant was somewhat uncooperative concerning his past history. Dr. Weise's report states:

> "In summary, we have insufficient history of patient's adjustment, past injuries or illnesses. At present he complains of continual pain in his head which, according to him, result in all of his other complaints, that is, continual discomfort, poor exercise tolerance and feelings of hopelessness. The picture is further complicated by the fact that he is taking Percodan and has been taking this medication for five years. It is not possible for me to determine whether or not he is forced to take the Percodan for pain or whether the pain is part of a dependency reaction on Percodan. Finally, his overweight state plus his in-

active type of adjustment now could result in most of his symptoms except for the head and neck pain. These may be on a hysterical basis."

In his written report and in his later testimony at the hearing on May 17, 1974, particularly in his cross-examination, Dr. Weise recommended a period of hospitalization for claimant in order to reduce or discontinue Percodan as a means of restoring the man's mental processes to a more normal and natural level for evaluation of his general health condition. On motion of claimant's counsel, and with no objection by employer's attorney, arrangements were set in motion for claimant to be hospitalized. However, the next day claimant declined the hospitalization and terminated the services of his attorney.

The hearing transcript of May 17, 1974, includes a written report of Joseph C. Taylor, a psychologist, dated February 22, 1974, who concludes that claimant's "current adjustment was not caused by the accident in 1968, however, this specific event probably served as a mild precipitating type of stress which tended to facilitate his current adjustment." The adjustment, as referenced, is "an adjustment in which he is totally dependent upon his wife and his father who live in close proximity with him. He is regressed to a rather immature and childlike level."

From these reports and the testimony, together with other record evidence, several factual observations emerge:

1. Claimant was injured in a mine accident on November 4, 1968, and was awarded temporary total disability compensation. Upon termination of the temporary disability compensation, he applied for evaluation for permanent disability rating. The Compensation Commissioner determined on November 13, 1970, that he was not entitled to a permanent partial disability compensation award. These proceedings have been in a developmental process since that time—through some seven-

teen set hearings and several continuances involving some fourteen doctors and several attorneys.

2. He applied for and was awarded and is receiving disability Social Security benefits.

3. His obesity, at his age now 42 years, his diabetic condition, and his reliance on Percodan obviously contribute to his claimed disability for any work.

4. In his petition to this Court for judicial review, his attorney observed that "All evidence in the record suggests that petitioner made a complete recovery from his orthopedic injuries." This observation is affirmed by record materials.

5. In his argument claimant's counsel states "Petitioner has used the drug Percodan since it was prescribed for him by Dr. Manual F. Uy, as authorized by the Workmen's Compensation Commissioner, for relief of pain associated with his compensable injury." The record fails to disclose any Compensation Commissioner authorization of claimant's use of Percodan for any purpose.

The Legislature, in 1971, stated the policy that "the rights of claimants for workmen's compensation be determined as speedily and expeditiously as possible." W. Va. Code, 23-5-3a. The Court noted this policy in *Griffith v. State Workmen's Compensation Commissioner*, ____ W. Va. ____, 205 S.E.2d 157, 163 (1974), particularly with reference to undisputed claims. In that case and in *Colvin v. Workmen's Compensation Commissioner*, 154 W. Va. 280, 175 S.E.2d 186 (1970), the Court noted the implied powers of the Commissioner in addition to the express powers detailed in the statute. Rule 12.01 of the Rules for the general administration of the West Virginia Workmen's Compensation Fund, effective September 7, 1974, implements the Commissioner's powers to investigate claims. Rule 16.01(f) sets out guidelines as to what may constitute good cause for continuances in claim proceedings and when continuances may be denied. In the course of the claim proceedings in this case, some of the

continuances were granted primarily because of the non-appearance of the claimant, in person or by counsel. But the long delay in processing the claim is not consistent with the declared policy of the Legislature to determine the rights of claimants as speedily and expeditiously as possible. This policy must be made meaningful since the workmen's compensation program is a creation of the Legislature.

The Federal Administrative Procedure Act, 5 U.S.C., § § 551-559, provides in § 557 that decisions of administrative agencies shall include a statement of findings and conclusions. The West Virginia Administrative Procedure Act, W. Va. Code, Chapter 29A, provides in § 29A-5-3 that "every final order or decision rendered by any agency in a contested case . . . shall be accompanied by findings of fact and conclusions of law." But § 29A-5-5 excepts the workmen's compensation fund from the requirements of § 29A-5-3. In this case the Commissioner's orders of November 13, 1970, and March 18, 1976, implemented by letter of April 7, 1976, and the Appeal Board's order and opinion of January 27, 1977, affirming the Commissioner's ruling, give no index to findings of fact on which their decisions and orders are based. The Appeal Board's opinion simply states that the Commissioner's order of March 18, 1976, "was not in error." W. Va. Code, 23-5-3, requires the Appeal Board to state in writing its reasons for its order. W. Va. Code, 23-5-4a, provides that on judicial review "the findings of fact of the board shall have like weight to that accorded to the findings of fact of a trial chancellor or judge in equity procedure." Without such record findings of an administrative agency, the Court on judicial review is greatly at sea without a chart or compass in making its determination and adjudication as to whether the agency decision is plainly right or clearly wrong.

The proceedings in this case are somewhat similar to proceedings detailed in *Sisk v. Workmen's Compensation Commissioner*, 153 W. Va. 461, 170 S.E.2d 20 (1969). In the *Sisk* case the Court employed and applied syllabus point one in *Pripich v. State Compensation Commission-*

*er*, 112 W. Va. 540, 166 S.E.4 (1932), stating the law in the following language:

"Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him."

A pertinent principle of law is summarized in I Larson's Workmen's Compensation Law, § 13.00 (1972), as follows:

"§ 13.00 When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that slows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to clamant's own intentional conduct."

As previously noted, Dr. Borbely considered claimant to have an 80% permanent partial disability, with "at least forty-five percent" attributable to the compensable mine accident of November 4, 1968. Dr. Weise was unable, because of claimant's condition and disposition at the time of his examination, to make any evaluation on permanent partial disability. The psychologist working with Dr. Weise concluded that claimant's "current adjustment was not caused by the accident in 1968, however, this specific event probably served as a mild precipitating type of stress which tended to facilitate his current adjustment."

The Court, in the *Sisk* case, *supra*, reversed the Appeal Board and remanded the claim to the Appeal Board and the Commissioner for entry of an award of total permanent disability. Administrative expertise, together with the medical expertise manifest in the record, pro-

vides bases for an administrative determination of a permanent disability rating. Accordingly, the January 27, 1977, order of the Appeal Board, affirming the Commissioner's ruling of March 18, 1976, is reversed and this case is remanded to the Appeal Board and to the Commissioner for a determination of the claim for workmen's compensation "as speedily and expeditiously as possible." W. Va. Code, 25-5-3a.

This decision will be certified to the Board and to the Commissioner as required by law. W. Va. Code, 23-5-4.

*Reversed and remanded with directions.*