327 S.E.2d 694

**Zeffie BROGAN**

v.

**WORKERS' COMPENSATION COMMISSIONER and Westmoreland Coal Co.**

**No. 16340.**

Supreme Court of Appeals of West Virginia.

Dec. 6, 1984.

Rehearing Denied Jan. 10, 1985.

---

Timothy G. Leach, U.M.W.A., Charleston, for appellant.

Anthony J. Cicconi, Shaffer & Shaffer, Madison, for appellee.

HARSHBARGER, Justice:

The claimant, Zeffie Brogan, appeals a final decision by the Workers' Compensation Appeal Board that affirmed a ruling by the Workers' Compensation Commissioner reducing his permanent partial disability award from 20% to 15%. Brogan asks us to limit the number of disability evaluations a claimant can be required to undergo. He also contends that the Appeal Board was clearly wrong in granting him only 15%. We conclude that W.Va. Code, 23–4–8 does place restrictions on disability evaluations and agree that Brogan is entitled to a 20% award.

Chronological review of this litigation is necessary to illuminate claimant's principal argument and the practical problems that prompted his plea for limitations on disability evaluations. We have included the disability estimates by examiners in the procedural history; the physical findings of the medical examiners are reviewed later to the extent their medical reports are properly in evidence.

Brogan sustained an injury to his right knee during the course of employment in April, 1978, and later underwent surgery for a torn meniscus. Following surgery and return to work in July, 1979, he was referred by the Commissioner to Dr. A.A. Abplanalp for a permanent partial disability evaluation. Based upon Dr. Abplanalp's findings and recommendation, the Commissioner granted a 20% permanent partial disability award on August 11, 1980.

The employer, Westmoreland Coal Company, protested this award by letter of August 27, and the Commissioner acknowledged receipt of the protest by letter dated September 10, and notified all parties that the employer was entitled to a hearing to be scheduled later. On October 7, the Commissioner gave notice that a hearing had been set for November 25 in the courthouse at Madison, Boone County, and that any request for a continuance had to comply with W.Va.Code, 23–5–3a and the rules and regulations of the compensation fund.

Brogan then obtained counsel who, by a November 18 letter, successfully requested a continuance because he had just entered the case and had other hearings elsewhere on November 25.

Thereafter, the employer made arrangements, evidently independent of the Workers' Compensation Commissioner, for Brogan to be examined by Dr. Elwood H. Heilman, an orthopedic surgeon. In a December 5 report, Dr. Heilman estimated permanent partial disability at 10%.

On December 19 the employer asked the Commissioner's authorization to have Brogan examined by Dr. C.A. Stevenson at the employer's expense. The Commissioner granted this request on December 30, giving notice of the approval by a form that advised Brogan that the Commissioner believed the employer's request was reasonable and that Dr. Stevenson had been requested to notify him of an appointment date for examination. Dr. Stevenson examined Brogan on January 20, 1981, and reported his findings to employer's counsel by letter bearing that date. He suggested an award of no more than 5% award.

On April 8, the Commissioner again gave notice that a hearing had been set for May 7 in Madison. Brogan's counsel, by letter dated April 17, again requested a continuance because he had several hearings scheduled on the same day, this time in Charleston. The Commissioner postponed the hearing on April 21.

On September 3, the Commissioner gave notice that a hearing had been scheduled for October 5 at Madison. This time, counsel for both parties appeared, and on the employer's behalf medical reports from Drs. Heilman and Stevenson were introduced, without objection, subject to claimant's right of cross-examination. At the conclusion of this brief hearing, Brogan's lawyer moved to continue the hearing until the next available Charleston docket in order to review the employer's medical evidence and determine if he would cross-examine either doctor or offer rebuttal medical evidence. There being no objection, the case was continued to the next available Charleston docket.

By notice dated March 11, 1982, the Commissioner scheduled another protest hearing for April 27 at Charleston. At this hearing, Brogan's counsel introduced a medical report dated December 22, 1981, prepared by Dr. George F. Fordham, subject to the employer's right of cross-examination, stating that the 20% disability recommendation previously awarded was certainly "not out of reason". At the conclusion of this hearing, the case was continued without objection to the next available Charleston docket on motion of employer's counsel who wanted time to decide whether to cross-examine Dr. Fordham.

The record does not disclose the date of the next Charleston hearing docket, but in any event on May 10 [1] counsel for the employer requested the Commissioner to refer Brogan to Dr. K.H. Lee for another medical examination at the employer's expense. This request, like the earlier request for Stevenson's examination, alleged no facts showing a need for further medical examination or for another physician's opinion. On May 28 the request was granted and Dr. Lee conducted his evaluation and advised the employer's counsel of his findings by letter on June 16. He recommended a 7% permanent partial disability award.

On October 6 the Commissioner set a fifth evidentiary hearing for November 9 in Charleston and the employer's counsel moved to introduce Dr. Lee's report at this hearing. Brogan's counsel objected, asserting that his client lacked the financial ability to "match the employer report for report." He argued that his client was unfairly disadvantaged by the financial disparity existing between the parties.

Asserting that the Commissioner should have some role in defending the initial disability award, he moved that the Commissioner refer Brogan to another physician of the Commissioner's choosing. Counsel for the employer did not oppose this motion and explained that the only reason the employer desired three medical examinations was the large spread in the disability estimates. Dr. Lee's report was admitted over

objection, the motion was referred to the Commissioner, and the claim was submitted for decision.

The Commissioner on December 23 denied Brogan's motions to strike the employer's third medical report and for an independent medical evaluation, and reduced his permanent partial disability award to 15%, making all payments above 15%, overpayments subject to recovery per W.Va. Code, 23–4–1d. Brogan appealed this ruling and the Appeal Board affirmed, finding that the Commissioner had properly applied the liberality rule and had not disregarded any medical evidence. It did not address counsel's objection to the employer's third medical report or for an additional examination by a neutral physician. This appeal followed.

## I.

Our analysis of the legal question begins and ends with examination of the language of W.Va.Code, 23–4–8. This section, entitled "Physical Examination of Claimant", provides, as relevant here:

"The commissioner shall have authority, after due notice to the employer and claimant, whenever in his opinion it shall be necessary, to order a claimant of compensation for a personal injury other than occupational pneumoconiosis to appear for examination before *a medical examiner or examiners* selected by the commissioner; and the claimant and employer, respectively, shall each have the right to select *a physician* of his or its own choosing and at his or its own expense to participate in such examination. The claimant and employer shall, respectively, be furnished with a copy of the report of examination made by the medical examiner or examiners selected by the commissioner. The respective physicians selected by the claimant and employer shall have the right to concur in any report made by the medical examiner or examiners selected by the commissioner, or each may file with the commissioner a separate report, which separate re-

---

**1.** The letter seeking authorization was apparently inadvertently dated May 10, 1981 rather than May 10, 1982. It was received by the Commissioner on May 13, 1982.

port shall be considered by the commissioner in passing upon the claim.... In any case the claimant shall be entitled to reimbursement for loss of wages, and to reasonable traveling and other expenses necessarily incurred by him in obeying such order.

Where the claimant is required to undergo a medical examination or examinations by a physician or physicians selected by the employer, as aforesaid or in connection with any claim which is in litigation, the employer shall reimburse the claimant for loss of wages, and reasonable traveling and other expenses in connection with such examination or examinations, not to exceed the expenses paid when a claimant is examined by a physician or physicians selected by the commissioner." (Emphasis supplied.)

■ So by the terms of Section 8, the Workers' Compensation Commissioner has broad authority and discretion to refer a claimant to a physician or physicians for medical examination or evaluation "whenever in his opinion it shall be necessary." The legislature recognized that the Commissioner in certain cases would need to require medical examination by more than one physician to properly adjudicate the various medical and legal questions that can arise in a claim. Proper development of medical facts may, and often does, require examinations and evaluations by physicians representing more than one medical specialty.

The next part of Section 8 authorizes a claimant and an employer to select a physician to participate in the medical examination conducted by the Commissioner's neutral physician. Joint physical examinations of claimants envisioned in this section have proven impracticable, if not impossible, and the practice has developed that claimants are evaluated separately, first by the Commissioner's examiner, and then by physicians selected by the claimant and employer. Requests for more than one disability evaluation are routinely granted by the Commissioner, a proper practice and con-

sistent with the legislative scheme insofar as a claimant and an employer each have the right to select one physician to conduct a medical examination and evaluation.

■ However, the legislature did not intend to permit either party to obtain unlimited disability evaluations. Section 8 was intended to grant both the claimant and the employer the right to select one—but only one—physician to examine and evaluate a claimant in addition to each examination and evaluation conducted by a neutral physician independently selected by the Commissioner.

The current practice does not comport with this legislative design. As this case illustrates, parties seek out "conservative" or "liberal" physicians for disability opinions, with each side trying to get more disability recommendations than the other side has. Often medical reports essentially reflect agreement on physical findings, differing only about percentages of disability. This practice is an adversary system at its worse, not helping workers or their families who are the intended beneficiaries of the law, and wasting employers' resources.

W.Va.Code, 23–4–8 contains two more important provisions offering a beneficial alternative to current practice. Section 8 provides that both parties must receive copies of medical reports prepared by the Commissioner's neutral medical examiner or examiners; and that medical reports of physicians selected by claimant and employer can be "filed" directly with the Commissioner and "shall be considered ... in passing on the claim." Here, medical reports were offered only at evidentiary hearings.

■ We wrote in Syllabus Point 1 of *Workman v. State Workmen's Compensation Commissioner*, 160 W.Va. 656, 236 S.E.2d 236 (1977), that "long delays in processing claims for workmen's [now workers'] compensation is not consistent with the declared policy of the Legislature to determine the rights of the claimants as speedily and expeditiously as possible. W.Va.Code, 23–5–3a." [2]  Considering this

2. W.Va. Code, 23–5–3a provides:

"It is the policy of this chapter that the rights of claimants for workmen's compensation be

declared policy and the economic and humane social purposes of the compensation law, W.Va.Code, 23–4–8 must require claimants and employers to promptly exchange all medical reports and submit them directly to the Commissioner *without waiting for an evidentiary hearing.*

■ This practice is important because the Commissioner has broad powers to make, refuse, or modify awards based upon credible evidence supplied by the parties and through independent medical evaluations, without advance evidentiary hearings, pursuant to W.Va.Code, 23–4–8, *see, e.g., Butcher v. State Workers' Compensation Commissioner,* 173 W.Va. 306, 315 S.E.2d 563 (1983); *Honaker v. State Workmen's Compensation Commissioner,* 171 W.Va. 355, 298 S.E.2d 893 (1982); *Mitchell v. State Workmen's Compensation Commissioner,* 163 W.Va. 107, 256 S.E.2d 1 (1979). Claims are frequently decided on written reports of medical experts without medical testimony and cross-examination.[3] We wrote in *U.M.W.A. v. Lewis,* 172 W.Va. 560, 309 S.E.2d 58, 65 (1983), that "[o]rdinarily the cross-examination of expert witnesses does little to illuminate the issues that are to be decided by the Commissioner, the Appeal Board, and, finally, this court."

■ Nothing in the statute, the administrative rules and regulations, or our decisions requires a physician's presence at an evidentiary hearing for his report to be received in evidence. W.Va.Code, 23–4–8 clearly contemplates that physicians' reports be submitted directly to the Commissioner. This is consistent with the mandate of W.Va.Code, 23–1–15 that "[t]he Commissioner shall not be bound by the usual common-law or statutory rules of evidence ... and may make investigations in such manner as in his judgment is best calculated to ascertain the substantial rights of the parties and to carry out the provisions of this chapter." *See Machala v. State Workmen's Compensation Commissioner,* 109 W.Va. 413, 155 S.E. 169 (1930).

Exchanging medical reports has distinct advantages over current practice, permitting earlier determination by counsel about whether to cross-examine medical experts. Also, because medical reports become a part of the record upon submission, subject to objection and the right of cross-examination, administrative hearings need not be conducted simply to introduce them, nor continuances granted to allow lawyers to decide whether to cross-examine!

■ We noted in *Abbot v. State Workmen's Compensation Commissioner,* 113 W.Va. 561, 562, 169 S.E. 163 (1933), "[t]he underlying purpose of a[n] [evidentiary] hearing in compensation cases is to afford opportunity for the examination and cross-examination of witnesses." We thus deem it essential that medical reports be freely exchanged and also submitted directly to the commissioner without waiting for evidentiary hearings. This procedure, much like the one provided for in Rule 35 of the

---

determined as speedily and expeditiously as possible to the end that those incapacitated by injuries and the dependents of deceased workmen may receive benefits as quickly as possible in view of the severe economic hardships which immediately befall the families of injured or deceased workmen. Therefore, the criteria for continuances and supplemental hearings 'for good cause shown' are to be strictly construed by the commissioner and his authorized representatives to prevent delay, in granting or denying continuances and supplemental hearings. It is also the policy of this chapter to prohibit the denial of just claims of injured or deceased workmen or their dependents on technicalities."

**3.** In Syllabus Point 1 of *Hoff v. State Workmen's Compensation Commissioner,* 148 W.Va. 33, 132 S.E.2d 772 (1963), the Court ruled that a medical report prepared by the Commissioner's examiner pursuant to W.Va. Code, 23–4–8 is hearsay and that an award of compensation cannot be made on hearsay alone. The Commissioner's doctor in *Hoff,* the only physician to find any permanent disability resulting from the injury, died before he was cross-examined. Significantly, the *Hoff* court also recognized that physicians' reports may be considered by the Commissioner "provided opportunity, if desired, is given to cross-examine doctors making such reports." *Id.,* 148 W.Va. at 37, 132 S.E.2d at 775. *See also* Syllabus Point 2, *Evans v. State Workmen's Compensation Commissioner,* 150 W.Va. 161, 144 S.E.2d 663 (1965).

To the extent that Syllabus Point 1 of *Hoff* prohibits awards based upon hearsay, it and its progeny are overruled.

Rules of Civil Procedure [4] dealing with discovery of physical and mental examinations, will aid the Commissioner in expeditiously ascertaining the true state of the facts and achieving substantial justice, and drastically reduce the enormously time-consuming run-a-round that some compensation claimants now suffer.

There will be no need to conduct evidentiary hearings in every contested permanent disability claim. Certainly no hearing would have been required in this case. When the Commissioner sets a case for hearing, upon objection pursuant to W.Va. Code, 23–5–1, or even earlier, the claimant and employer after reviewing any medical evidence previously exchanged, can decide whether to present direct testimony or to conduct cross-examination. The parties then promptly notify the Commissioner if their decision is to submit the claim on the medical evidence. When cross-examination is necessary, the Commissioner should be notified about issuing subpoenas. *See* W.Va. Code, 23–1–9.

In this connection, we recognize W.Va. Code, 23–5–1 requires the Commissioner to conduct a hearing within thirty days after an objection to a disability award, unless the hearing is postponed by agreement of the parties or by the Commissioner for

good cause shown. We readily acknowledge that medical examinations and accompanying disability reports can seldom, if ever, be obtained, exchanged and submitted to the Commissioner within such a brief period of time. Necessary delay to obtain disability evaluations manifestly constitutes good cause for continuance until the parties have secured their medical evidence and provided it to the other side and the Commissioner. We urge the Commissioner to promptly promulgate administrative rules and regulations about these matters, W.Va. Code, 23–1–13.

In construing W.Va. Code, 23–4–8 to require exchange and submission of medical reports, we have not undertaken a nation-wide review of modern procedures for adjudicating contested workers' compensation claims. Such task is better left to the expertise of the Commissioner and staff. Our research did reveal, however, that other states have adopted procedures to minimize the cost and delay in presenting medical evidence. The Mississippi Supreme Court invoked its inherent rule-making power in *Georgia-Pac. Corporation v. McLaurin,* 370 So.2d 1359, 1362–63 (Miss. 1979), and provided supplementary guidelines for exchange and introduction of medical reports.[5] Georgia has enacted a

---

**4.** Rule 35, W.Va. Rules of Civil Procedure, provides in relevant part:

"(a) *Order for examination.*—When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or other qualified expert ...

"(b) *Report of examining physician or other qualified expert.*—(1) If requested by ... the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician or other qualified expert setting out his findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it."

**5.** The Mississippi court's supplementary guidelines, applicable prospectively and to pending cases, if practical, are:

"(1) At least thirty days prior to a hearing before the administrative judge the party desiring to introduce a written medical report from a physician shall forward a copy of the report to opposing counsel and the administrative judge, together with written notice that the original report was proposed to be introduced in evidence at the hearing without the presence of the report's author. By giving such written notice and forwarding the reports to opposing counsel, or the opposing party, if not represented by counsel, the party intending to offer the report waives the privileged communication made by the party to a physician or surgeon as provided in Mississippi Code Annotated section 13–1–31 (1972). The party against whom the report is to be offered, after written notice given as set out above, shall have the privilege of contacting the physician and/or securing his deposition prior to the hearing, and his presence at the hearing.

"(2) Within fifteen days after such service, the party upon whom such report and notice shall have been served, may demand the taking of the

statute attempting to provide a simple and inexpensive means for introduction of medical reports. *Foster v. Continental Casualty Co.*, 141 Ga.App. 415, 233 S.E.2d 492 (1977).[6] Similarly, the industrial court in Oklahoma has adopted a rule providing that litigants must furnish the opposing party copies of all medical reports to be offered in evidence prior to the hearing, and the recipient of the report must notify the opponent and the industrial court within five days after receipt thereof to preserve the right of cross-examination. *See Yuba Heat Transfer v. Wilson*, 565 P.2d 674 (Okla.1977); *Employers Commercial Union Insurance Group v. Schoen*, 519 P.2d 819 (Alaska 1974).

## II.

Brogan's remaining contention is that the evidence when liberally construed as mandated by the liberality rule, *see Myers v. State Workmen's Compensation Commissioner*, 160 W.Va. 766, 239 S.E.2d 124 (1977); *Workman v. State Workmen's Compensation Commissioner*, 160 W.Va. 656, 236 S.E.2d 236 (1977); *Sisk v. State*

*Workmen's Compensation Commissioner*, 153 W.Va. 461, 170 S.E.2d 20 (1969); *Fulk v. State Workmen's Compensation Commissioner*, 112 W.Va. 555, 166 S.E. 5 (1932), entitles him to a 20% permanent partial disability award.

Because Section 8 limits the claimant and the employer to one disability evaluation for every such evaluation conducted by the Commissioner's independent, neutral examiner, the question remains how this ruling will apply to this case and other cases wherein current practice has not conformed to legislative command.

The Commissioner and the claimant each selected one orthopedist to conduct evaluations, but the employer had Brogan examined by three orthopedists. When the employer sought to introduce its third medical report, the claimant unsuccessfully objected. The Appeal Board did not mention the point. The medical report from the employer's third evaluating physician should not have been admitted and considered in deciding the claim. Likewise, the employer had no statutory right to

deposition of the reporting physician. In such event, the party proposing to offer the report shall cooperate in obtaining and arranging for the taking thereof, at the earliest time and at a place convenient to all parties.

"If at a hearing before the administrative judge the party against whom the written document introduced shall show sufficient cause for not being able to secure the testimony of the physician or his attendance at the hearing, the administrative judge may, in his discretion, recess the hearing in order to give such party an opportunity to complete its right of examination or cross-examination of the physician.

"(3) Such report shall be signed and verified by the oath of the medical expert making it, and shall be regarded as the testimony of such expert to the facts stated in the report. False statements in the report shall subject the deponent to the same penalties, to the same extent, as if he had personally appeared and testified to such statements on oath as a witness in open court. The contents of such report shall be restricted to such matters as lie within the personal knowledge of the doctor or to which he would have been allowed to testify, if he had been personally present as a witness. Statements in the report shall be subject to the same objections as to admissibility, relevancy and competency as the testimony of the reporting doctor would have been, if he had been personally present.

"(4) In taking the deposition of the opposite party's doctor under the above circumstances, the party taking same shall not be deemed to have made the doctor his witness, but shall have the same right of cross-examination, as if the doctor had testified as a witness for the party offering the report."

6. Official Georgia Code Annot., § 34–9–102(e)(2) (1982), provides:

"Any medical report on a form prescribed by the board or in narrative form signed and dated by an examining or treating physician or other duly qualified medical practitioner shall be admissible in evidence insofar as it purports to represent the history, examination, diagnosis, treatment, and prognosis by the person signing the report, as if that person were present at the hearing and testifying as a witness, subject to the right of any party to object to the admissibility of any portion of the report and subject to the right of an adverse party to cross-examine the person signing the report and provide rebuttal testimony within the time allowed by the administrative law judge. The party tendering the medical report may, within the time allowed by the administrative law judge, also introduce the testimony of the person who has signed the medical report, for the purpose of supplementing the report."

 

have Brogan evaluated by a second orthopedist and, consequently, his report should not have been considered.

The Commissioner's examiner, Dr. Abplanalp, reported that Brogan said the knee malfunctioned when he squatted, carried a load or stood on it for awhile, and that he had been told he had a torn meniscus and a Baker's cyst.[7] Examination revealed a scar over the medial parapatellar region one inch long, a two-inch scar on the posterior medial aspect of the right knee, and a small scar from anthroscopic examination on the medial and lateral aspect of the right knee. Some atrophy of the right thigh was present. Flexion on the right knee was 45° compared to 40° on the left, with full extension of 180°. Squatting caused some grating in left knee, and x-rays revealed evidence of minimal spurring of the superior articular margin of the patella, and slight osteoporosis. Dr. Abplanalp diagnosed post-surgical lateral menisectomy and Baker's cyst, and estimated permanent partial disability at 20%. The physician Brogan selected, Dr. Fordham, stated that this disability award was not out of reason.

Dr. Heilman, the employer's first orthopedist, indicated Brogan complained of pain on bending the right knee or being on his feet for long periods. Clinical examination revealed: Drawer sign negative; no medial or lateral relaxation; one inch atrophy of right quadriceps; 40° flexion on left and 35° on right; no osteoarthritic changes; extension bilaterally; slight crepitation below right patella. He recommended a 10% award.

■ This evidence compels us to find that the Appeal Board was clearly wrong in granting only 15%.

The March 21, 1984 final decision of the Workers' Compensation Appeal Board is, therefore, reversed and set aside and the case is remanded to the Commissioner with directions to reinstate the order of August 11, 1980 granting a 20% permanent partial disability award.

All of which is certified to the Workers' Compensation Appeal Board and the Workers' Compensation Commissioner as provided for by law. W.Va. Code, 23–5–4.

Reversed and remanded with directions.

---

7. A Baker's cyst is defined in Dorland's Illustrated Medical Dictionary (25th Ed.1974) at 398 as: "A swelling behind the knee, caused by escape of synovial fluid which has become enclosed in a sac of membrane ...."