345 S.E.2d 785

Byrd **NELSON**, et al.

v.

Mary Martha **MERRITT**, Commissioner, Workers' Compensation Commission.

No. 16742.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1985.

Dissenting Opinion June 12, 1986.

Amos C. Wilson, Logan, for appellant.

Robert L. Stultz, Charleston, for appellee.

BROTHERTON, Justice:

In this mandamus proceeding, involving six consolidated workers' compensation claims, the Court is asked to review and modify, clarify, or reverse its decision in *Brogan v. Workers' Compensation Comm'r*, 174 W.Va. 517, 327 S.E.2d 694 (1984), as to the Court's interpretation of W.Va. Code § 23-4-8 (1985).

Each petitioner in the case presently under consideration claims to be aggrieved by

the *Brogan* decision because the decision has prevented him from submitting evidence necessary to develop his case fully.[1] Several petitioners additionally complain of long administrative delays and are distressed about the *Brogan* requirements relating to the exchange of medical reports.[2]

This Court is asked, among other things, to:

1. Modify the *Brogan* decision so as to permit a claimant to select more than one physician to examine and evaluate him for each medical examination conducted by a physician neutrally selected by the Commissioner; and

2. Reverse syl. pt. 5 of the *Brogan* decision setting out procedural requirements for exchange of medical reports, notice of objections to medical reports, and requests for examination of the medical expert, prior to an evidentiary hearing.

While we feel that the *Brogan* requirements relating to the exchange of medical reports, notice of objections to medical reports, and requests for examination of the medical expert *prior to* an evidentiary hearing was a correct decision and one necessary for the speedy and expeditious administration of justice, we are no longer convinced that the "one doctor rule" in *Brogan*, as it is being applied, is legally correct.

The *Brogan* decision grew out of a ruling of the Workers' Compensation Appeal Board, affirming a ruling of the Workers' Compensation Commissioner, reducing the claimant's permanent partial disability award from 20% to 15%. Mr. Brogan, the claimant, was upset over the number of medical evaluations he was required to undergo in order to resolve his claim and

---

1. In syl. pt. 1 of *Brogan* the Court held, in part: "... The Legislature in enacting W.Va. Code § 23-4-8 intended to grant a claimant and an employer the right to select one, but only one, physician to examine and evaluate a claimant for each medical examination and evaluation conducted by such neutral physician independently selected by the Commissioner."

2. The Court also held in syl. pt. 5 of *Brogan*: "W.Va. Code, 23-4-8, when liberally construed to achieve the objectives of the workers' compensation law, requires claimants and em-

ployers to promptly exchange all medical reports and submit them directly to the Commissioner without waiting for an evidentiary hearing. Upon receipt, medical reports will become a part of the record in the case, subject to the right of an opposing party to object to their admissibility and to cross-examine the medical experts. Admissibility objections and requests for cross-examination must also be promptly submitted to the Commissioner to avoid needless evidentiary hearings."

asked this Court to limit the number of evaluations required of a claimant. This Court, persuaded by Mr. Brogan's arguments, adopted the rule set forth in syl. pt. 1 of the *Brogan* decision (*see* note 1, *supra*) and held that W.Va. Code § 23-4-8 (1985) limited the claimant and the employer to one additional medical evaluation after the Commissioner had referred the claimant out for an independent evaluation.

The petitioners now claim that this holding was incorrect and that the Commissioner's memoranda of procedural requirements dated February 8, 1985, and May 6, 1985, designed to implement the *Brogan* decision compound the problem. After carefully considering the parties' briefs and the law relating to the question, it is apparent that our decision in *Brogan* requires clarification.

## I.

In interpreting § 23-4-8, the *Brogan* decision confined its inquiry to the first paragraph of that section, dealing with the initial determination of the proper award for a claimant's injury, to-wit, temporary total disability payment, or claims not in litigation. *See Brogan, supra,* 174 W.Va. at 520-21, 327 S.E.2d at 698. In such cases, the Commissioner refers the claimant to a single physician for an examination and, if the claimant or the employer so desired, he, too, might require the claimant to be examined and evaluated a single time. The *Brogan* decision was correct to the extent that it applied the one-doctor rule to claims not in litigation.

*Brogan* was incorrect, however, in its application of the first paragraph of § 23-4-8 to claims in litigation.[3] The second paragraph of § 23-4-8 deals with the evaluation procedure of Compensation claims in litigation:

3. We define litigation in this context to mean a protest or an appeal has been made pursuant to the Workers' Compensation Act.

4. It should be noted that the commissioner has set forth a different interpretation of Code § 23-4-8 than that which we are enunciating in this opinion. The commissioner's interpreta-

Where the claimant is required to undergo a medical examination *or examinations* by a physician *or physicians* selected by the employer, as aforesaid or in connection with any claim which is *in litigation,* the employer shall reimburse the claimant for loss of wages, and reasonable traveling and other expenses in connection with such examination *or examinations,* not to exceed the expenses paid when a claimant is examined by a physician or physicians selected by the commissioner. (emphasis added)

It is clear from reading the second paragraph of W.Va. Code § 23-4-8 that by use of the plural *"examinations"* and *"physicians"* the legislature intended that the employer be entitled to more than one medical examination by more than one physician as selected by the employer.[4] In interpreting a statute, each word of the statute should be given some effect, and if undefined will be given its common, ordinary, accepted meaning. *See, e.g., Woodell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976). The phrase "examination *or examinations*" unambiguously allows for one *or more* examinations. If the legislature had intended for the claimant to be examined only once, they would not have used the plural nouns *"examinations"* and *"physicians."* It is implied, of course, that if the employer is entitled to more than one medical examination that the claimant is also entitled to more than one medical examination.

The right of the claimant and the employer to have a number of medical examinations is further strengthened when W.Va. Code § 23-4-7a (1985) (which deals with monitoring of temporary total disability claims and a procedural requirement for review and evaluation, if any, for permanent partial disability) is read *in pari*

tion allows for only one doctor from each discipline to examine the claimant. While this may be a plausible interpretation, it is certainly not the exclusive one. The interpretation we set forth today rests on more solid footing than that of the commissioner, and it is, therefore, the interpretation we adopt.

*materia* with § 23–4–8.[5]  Code § 23–4–7a(e), in support of § 23–4–8, provides that "[t]he provisions of this section are in addition to and are in no way in derogation of the power and authority vested in the Commissioner by other provisions of this chapter or vested in the employer to have a claimant examined by a physician *or physicians* of its selection ..."  Again, the use of the plural *"physicians"* indicates multiple examinations are contemplated.  We, therefore, hold that where a Workers' Compensation claim is in *litigation,* both the employer and the claimant are entitled to a reasonable number of medical examinations,[6] and we modify *Brogan* accordingly.

## II.

While the petitioners seek a reinterpretation or reversal of *Brogan* as to the number of medical examinations the claimant and employer may request, and a reversal of syl. pt. 5 in *Brogan,* the underlying relief sought by the claimants is a semblance of order in the procedures which allow for endless continuances without just cause shown, denying the claimant his right to a speedy and expeditious determination of his claim pursuant to the policy as set forth in W.Va. Code § 23–5–3a (1985),[7] and syl. pt. 1 of *Workman v. Workmen's Compensation Comm'r,* 160 W.Va. 656, 236 S.E.2d 236 (1977).

*Brogan* attempted to grant the claimant some relief in syl. pt. 5 by stressing that W.Va. Code § 23–4–8 requires the exchange of medical reports, the admission of the medical reports, and reply by the parties as to their objection to the reports or their desire to cross-examine the medical experts.  This is really the heart of *Brogan* and apparently the Commissioner has ignored it in her procedural rules because it would appear that numerous continuances were granted in the six cases herein, without any just cause being shown.  This Court, in *Scites v. Huffman,* 174 W.Va. 191, 324 S.E.2d 152, 156 (1984), restated what had already been said in *Brogan* by holding that long delays in processing claims were not consistent with the intent of the legislature in the enactment of compensation legislation, nor does it benefit the claimant.  The Court in *Scites* restated the sections of the Workers' Compensation Act which deal with mandatory procedural requirements and mandatory processing requirements, with the hope that the Commissioner would bring some order out of the morass that would expedite the claimant's claim and require the lawyers, who seem to be in control of procedural guidelines for the Commission, to have all of their medical examinations completed within a specified period of time, and if the medical expert was to testify, the direct and cross-examination would all be completed in one day and continuances would not be granted for additional examinations

---

5. Workers' Compensation statutes dealing with the same subject matter are to read *in pari materia.  See, e.g., Hudson v. State Workmen's Compensation Comm'r,* 162 W.Va. 513, 515, 256 S.E.2d 864, 865 (1979).

6. While a party would be entitled to any number of medical examinations necessary to achieve *an accurate determination of the claimant's disability,* this Court will not allow multiple examinations to be used in bad faith as a tactic to intimidate a claimant or delay a proceeding.  Hopefully the Commissioner's new regulations will set out a procedure for determing what "a reasonable number" of medical examinations will be in each case and a time frame when all medical examinations shall be completed; the report mailed to the Commissioner; exchanged between the parties; and written notice to the Commissioner *of the intent of the parties of a desire for an evidentiary proceeding concerning the medical reports.*

7. "It is the policy of this chapter that the rights of claimants for workmen's compensation be determined as speedily and expeditiously as possible to the end that those incapacitated by injuries and the dependents of deceased workmen may receive benefits as quickly as possible in view of the severe economic hardships which immediately befall the families of injured or deceased workmen.  Therefore, the criteria for continuances and supplemental hearings "for good cause shown" are to be strictly construed by the commissioner and his authorized representatives to prevent delay, in granting or denying continuances and supplemental hearings.  It is also the policy of this chapter to prohibit the denial of just claims of injured or deceased workmen or their dependents on technicalities."  W.Va. Code § 25–5–3a (1985).

once the period had passed when examinations should have been conducted.

It is obvious from reading the records in the six cases involved in the present appeal and other claimants' cases that come before this Court that there are no criteria for continuances and supplemental hearings. All that is necessary is simply for the lawyer of one of the parties to request that the claim be continued until the next docket, and the hearing examiner seldom makes inquiry as to the reason for the continuance other than the fact that either the lawyer for the claimant or the lawyer for the employer is not prepared to go forward at that time. Despite the general policy in compensation cases of liberality in procedural, technical and substantive matters, W.Va. Code § 23–5–3a (1985) states: "[T]he criteria for continuances and supplemental hearings 'for good cause shown' are to be *strictly construed* by the commissioner and his authorized representatives to prevent delay, in granting or denying continuances and supplemental hearings." (emphasis added) Therefore, no continuances should be granted in a compensation case except where good cause is shown.

▇ The Commissioner, in her answer, indicates she has created a blue ribbon committee consisting of lawyers for the claimant, lawyers for the employer, lawyers for the union, and lawyers for the Commissioner, to draft new practice and procedure regulations pursuant to the authority of the Commissioner under W.Va. Code §§ 23–1–13, 15 (1985). This Court applauds the Commissioner's efforts to resolve the problems in the present system and stresses that these new rules should be drafted so as to end any unnecessary continuances. This Court, for the third time, as it did in *Brogan*, as it did in *Scites*, now affirms those decisions that have liberally construed W.Va. Code § 23–4–8 to require the exchange among the parties and the Commissioner of any and all medical reports that each might have, without waiting for an evidentiary hearing, and the requirement that the parties shall object in writing to the Commissioner as to the admissibility of a report and state their re-

quest for cross-examination of the medical expert. The submission of the reports and the request for direct and cross-examination of the medical experts must be promptly submitted to avoid the needless delays and the number of evidentiary hearings.

▇ While our principal purpose in this opinion is to clarify the *Brogan* decision, our efforts would be meaningless if the Commissioner were not required to modify her procedural rules accordingly. Because the respondent has a mandatory duty to promulgate rules and regulations in accordance with decisions of this Court, *see* W.Va. Code § 23–1–15 (1985), *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625, 641–42 (1983), and mandamus will lie to compel a public officer to discharge a nondiscretionary duty, *see* syl. pt. 1, *State ex rel. Bache & Co. v. Gainer*, 154 W.Va. 499, 177 S.E.2d 10 (1970), this Court grants the petitioners' prayer for a writ of mandamus against the respondent insofar as the respondent's memorandum of February 8 and May 6 are in conflict with this opinion, with instructions to amend said memorandum to comply with this Court's decision.

Writ granted as moulded.

McGRAW, Justice, dissenting:

There is absolutely nothing in *Brogan* that conflicts with the second paragraph of West Virginia Code § 23–4–8 (1985 Replacement Vol.). In *Brogan*, 327 S.E.2d at 698, this Court observed that, "Proper development of medical facts may, and often does, require examinations and evaluations by physicians representing more than one medical specialty." In Syllabus Point 1 of *Brogan*, this Court held in part that, "The Legislature in enacting W. Va. Code, 23–4–8, intended to grant a claimant and an employer the right to select one, but only one, physician to examine and evaluate a claimant for each medical examination and evaluation conducted by such neutral physician independently selected by the Commissioner." Thus, *Brogan* contemplated that, indeed, in circumstances involving more than one medical specialty, a claimant would be "required to undergo a medical examination *or examinations* by a physi-

cian *or physicians* selected by the employer" under West Virginia Code § 23–4–8 (1985 Replacement Vol.). This same fundamental flaw in the majority's reasoning appears with respect to its *pari materia* reading of West Virginia Code § 23–4–7a(e) (1985 Replacement Vol.).

The implication that this Court somehow overlooked the second paragraph of West Virginia Code § 23–4–8 (1985 Replacement Vol.) in *Brogan* is patently absurd. *See Brogan,* 174 W.Va. at 520–21, 327 S.E.2d at 698. It is obvious from its lack of cogent analysis that the majority grasps at straws in its emasculation of *Brogan.* The superficiality of the majority's discussion of the one physician per speciality rule in the instant proceeding stands in stark contrast to the thoughtful disquisition contained in *Brogan.* Particularly troubling is the majority's complete failure to address the practical impact of its departure from *Brogan* in light of the clear applicability of the doctrine of *stare decisis.*

"The principle of stare decisis," as this Court observed in *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 1028–29, 207 S.E.2d 169, 173 (1974), "is firmly rooted in our jurisprudence. Uniformity and continuity in law are necessary." This Court further noted in *Dailey v. Bechtel Corp.,* 157 W.Va. at 1029, 207 S.E.2d at 173 that, "[D]eviation from its application should not occur absent some urgent and compelling reason." *See also Adkins v. St. Francis Hospital,* 149 W.Va. 705, 718, 143 S.E.2d 154, 162 (1965). The contemporaneousness of the decision in *Brogan* strengthens its protection by the concept of *stare decisis.* "If the doctrine of stare decisis is to play any judicial role," stated this Court in *Dailey v. Bechtel Corp.,* 157 W.Va. 1029, 207 S.E.2d at 173, "we cannot overrule a decision so recently rendered without any evidence of changing conditions or serious judicial error."

No urgent and compelling reasons have been given by the majority for overruling *Brogan.* In fact, the only reason given by the majority, *Brogan*'s conflict with the second paragraph of West Virginia Code § 23–4–8 (1985 Replacement Vol.), is clear-

ly wrong. Moreover, there is no discussion in the majority opinion of any evidence of changing conditions or serious judicial error resulting in burdensome execution of its mandate. With respect to the application of the doctrine of *stare decisis,* the message of the majority opinion is undeniably clear. Analysis of the persuasiveness of established precedent in this jurisdiction is more compositional than rational.

The practical effect of the majority's departure from *Brogan* is immediate restoration of the practice of mandating that many workers seeking disability benefits run an often excruciating gauntlet of superfluous medical examinations in order to prevail. Especially for workers seeking benefits for pneumoconiosis or back injuries, the process can be described as nothing less than physical and psychological torture. The majority opinion speaks of a "reasonable number" of medical examinations, overlooking that, at a minimum, *Brogan* still permitted three examinations for each medical speciality, one by the commissioner's physician, one by the employer's physician, and one by the claimant's physician. The majority opinion gives absolutely no indication of when examination by more than three specialists would be appropriate. Therefore, no guidance is given the commissioner with respect to the promulgation of rules and regulations to implement this amorphous "reasonable number" standard. Shifting this burden to the commissioner demonstrates that President Harry S Truman's willingness to accept the fact that, "The buck stops here," is not shared by a majority of this Court.

The compassion and concern for the injured worker reflected in the decision in *Brogan* is conspicuously absent from the majority opinion. In reality, the workers' compensation system has been twisted into the attorneys' and physicians' compensation system. The decision in *Brogan* threatened these "professional" beneficiaries. They reacted almost immediately with unquestionably self-motivated swiftness to secure a return to "business as usual." Where "business as usual," however, means balancing the personal affluence of professionals on the backs of the

injured working people of this State, I must dissent.