395 S.E.2d 540

**Lois Marjorie SPURLOCK, Petitioner**

**v.**

**Emily A. SPIELER, Workers' Compensation Commissioner, and Owens–Illinois, Inc., Respondents.**

**No. 19662.**

Supreme Court of Appeals of West Virginia.

July 20, 1990.

---

John H. Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, for Lois M. Spurlock.

Roger W. Tompkins, Atty. Gen., C. Terry Owen, Sr. Asst. Atty. Gen., Atty. General's Office, Charleston, for Emily A. Spieler.

Russell Alexander, Huntington, for Owens–Illinois, Inc.

PER CURIAM:

This case is before us pursuant to a petition for a writ of mandamus. The petitioner, Lois Marjorie Spurlock, prays that this Court issue a writ of mandamus prohibiting the Commissioner from referring the petitioner for further psychiatric evaluation and requiring the Commissioner to grant the petitioner a permanent total disability award. We grant the petitioner's writ of mandamus.

The petitioner was employed by Owens–Illinois, Inc. from 1953 to August 13, 1984. During that period of time, she sustained two injuries in the course of and resulting from her employment. The petitioner sustained a back injury on May 19, 1983, and was awarded a 3% permanent partial disability award by an order of the Commissioner on November 26, 1986. On August 13, 1984, she sustained injuries to both wrists and to her left knee. She received a 35% permanent partial disability award for those injuries by an order of the Commissioner dated August 16, 1985. Protests were taken by the petitioner to both awards. During protest litigation, evidence was submitted in support of a permanent total disability claim.

At a hearing on July 24, 1989, the petitioner's two claims were cross-indexed and submitted for decision. The petitioner made a motion that this claim be considered as a permanent total disability award, in light of the medical and vocational evidence of record. The employer informed the Commissioner that it was their position that the evidence demonstrated that the petitioner was permanently and totally disabled through the combined effects of the multiple injuries she sustained. The employer moved that the petitioner be granted a second injury life award. The employer also informed the Commissioner that it was the employer's position that the evidence demonstrated that the disability to the wrists and left knee from the petitioner's second injury was less than previously documented, and that therefore the employer should only be charged with 23% of the total impairment in that claim.

Although this claim was submitted for decision on July 24, 1989, the Commissioner made no ruling until February 16, 1990. At that time, the Commissioner entered an order denying the request for a permanent total disability award. The Commissioner further ordered that the petitioner be referred to a psychiatrist for a determination of whether the claimant suffered from any psychiatric disability as a result of her com-

pensable injuries. In this February 16, 1990 order, the Commissioner based her decision to deny the permanent total disability award on the fact that the petitioner was approached by the Department of Vocational Rehabilitation for the purpose of seeking her participation in a physical capacities evaluation to determine what the petitioner's specific physical restrictions were. After vacillating between the option of retiring or participating in this evaluation, the petitioner chose to retire. The petitioner had expressed concern that this evaluation would be painful and that she did not wish to endure more pain. The Commissioner further stated that the record did not show that there was any undue risk involved in undergoing such evaluation. The Commissioner also found that doctors had opined that the petitioner could benefit from rehabilitation.

In this mandamus proceeding, the petitioner asserts that the Commissioner failed to comply with her statutory jurisdictional powers by failing to render a decision within thirty days of final hearing and by attempting to refer the petitioner for further evaluation more than thirty days after submission of the claim at the final hearing. Based on the facts before us, we agree. West Virginia Code § 23–5–1 (Supp.1990) provides, in pertinent part, that "[a]t any time within thirty days after hearing, if the Commissioner is of the opinion that the facts have not been adequately developed at such hearing, he may order supplemental hearing upon due notice to the parties. After final hearing the Commissioner shall, within thirty days, render his decision affirming, reversing or modifying his former action, which shall be final."

We held in Syl. Pt. 5 of *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983) that "[t]he workers' compensation commissioner must act on the workers' compensation claims within the statutorily prescribed time limits...." The time limits in W.Va. Code § 23–5–1 are specifically mentioned in *Meadows* as ones by which the Commissioner must abide. Pursuant to the time limits established in W.Va.Code § 23–5–1, the Commissioner may order supplemental

hearing on facts he opines were not sufficiently developed at the last hearing within thirty days of that hearing. In this case, the Commissioner waited approximately six months before she determined that psychiatric evidence was necessary. In addition, the Commissioner disregarded the import of W.Va.Code § 23–5–1 when she failed to rule on the petitioner's claim for six months after the claim had been submitted. West Virginia Code § 23–5–1 sets forth that the Commissioner shall render a decision within thirty days of the hearing. As we found in *Meadows,* the mandatory language of the statute "precludes the exercise of discretion on the part of the commissioner." 172 W.Va. at 471, 307 S.E.2d at 639.

The petitioner further asserts that the evidence in this record substantiates her claim for a permanent total disability award. We agree. John C. Huntwork, M.D., described the petitioner's injuries and complaints in his letter dated November 26, 1985. Dr. Huntwork stated that the petitioner injured her back in 1983 by lifting cartons. She suffered a "very mild degree of degenerative change in the lumbar vertebral bodies and a mild compression deformity of the body of D–12, ..." Because of this injury, she currently experiences pain in her back if she sits for long periods of time or does work that requires assuming an awkward posture. Dr. Huntwork further stated that the petitioner's second injury occurred in August 1984, when she tripped and fell, landing on her hands, knee and mouth. As a result of this fall, the petitioner suffered fractures in both wrists and currently suffers occasional numbness in her hands. The petitioner also finds that her hands are "clumsy and weak" when she attempts to grasp or lift something. In addition to the injury to both wrists, the petitioner also fractured her knee. The petitioner told Dr. Huntwork that because of her knee injury, she has trouble standing for long periods of time, and that occasionally her knee gives out, causing her to fall. Dr. Huntwork opined that the petitioner had a 15% whole person impairment based on problems with her right arm and wrist, and a 15% impairment based on the

problems with her left wrist. In addition, Dr. Huntwork believed she sustained a compression fracture in her back and was entitled to a 5% wholeman impairment for that injury. Finally, because of her knee injury, Dr. Huntwork found a 15% wholeman impairment to dysfunction in her left leg. Even though Dr. Huntwork assessed percentages of disability based on wholeman criteria of the AMA, he stated that "in a larger sense, in light of her education, and work experience, she is not able to return to the work place." Dr. Huntwork stated this opinion after considering that the petitioner "can not stand and walk for long periods of time because of knee pain, ... [nor can she] bend and lift substantial amounts of weight or in a repeated or repetitive manner. She can not use her hands for activities requiring great dexterity, handling or significant weights...."

Dr. Colin Craythorne, a Board certified orthopedist, testified at a December 21, 1987 hearing that he treated the petitioner for the fractures to her wrists and left knee. Dr. Craythorne testified that the injuries to petitioner's wrists would limit to some extent her ability to use her wrists in the work force if her job required substantial work with her hands. Although Dr. Craythorne stated that he believed a vocational evaluation would be proper, he answered that he would not disagree with the conclusion from a vocational expert if that expert had already examined the petitioner and concluded that she was unable to perform any remunerative work due to her injuries and lack of other training.

Dr. John Hunt testified at a hearing held on July 24, 1989. Dr. Hunt opined that based on his examination of the petitioner, she had a wholeman impairment of 23% due to her injuries to her wrists and left knee. He did not consider her back injury in this calculation. Even though he calculated a percentage of disability of 23%, Dr. Hunt concluded that the petitioner was permanently and totally disabled based on a combined effect of her multiple injuries.

In addition to medical evidence, the petitioner submitted evidence of a psychiatric disability. Dr. Arturo Lumapas stated in a deposition dated May 18, 1989, that he examined the petitioner on April 29, 1987. Based on his examination, he made the diagnosis that the petitioner suffered a dysthymic disorder related to her work injuries and inability to continue with normal activities. Dr. Lumapas estimated that the petitioner suffered a 50% impairment due to her compensable injuries.

There was vocational evidence submitted in this case to substantiate the petitioner's permanent total disability request. Robert L. Williams, M.A., a rehabilitation counselor, stated in his report dated February 8, 1986 that the petitioner possesses a 10th grade education, but reads on a sixth grade level and performs math on a fifth grade level. Mr. Williams found the petitioner's intelligence level to be in the "low average range" and stated that she did "not have the educational or mental capacity to learn any other type of work, and referral to vocational rehabilitation would be futile." He opined in the February 8, 1986 letter, and again in a June 22, 1987 letter that he believed that she was permanently and totally disabled due to the combined effects of her injuries.

Laura J. Patterson, a licensed professional counselor, submitted a report dated July 10, 1989. Based on her interview with the petitioner and after a review of the evidence, Ms. Patterson concluded that the petitioner was permanently and totally disabled as a result of the combination of injuries received on May 15, 1983 and August 13, 1984. Ms. Patterson opined that vocational rehabilitation was not feasible given the petitioner's age.

Based on the fact that the Commissioner did not abide by the prescribed time periods when she failed to render a decision for approximately sixth months after the last hearing in this case, we grant the petitioner's request for a writ of mandamus. Furthermore, we find that the evidence supports the petitioner's request for a permanent total disability award from the second injury fund. In making this finding, we have considered the reasons contained in the Commissioner's February 16, 1990 order, but find that based on a review of the

record before us, there is ample support for a permanent total disability award.

■ Even though the petitioner was employed by the respondent when she sustained her injuries in both 1983 and 1984, a second injury life award is proper. We held in Syl. Pt. 2 of *Estep v. State Workmen's Compensation Comm'r,* 171 W.Va. 168, 298 S.E.2d 142 (1982) that:

> When an employee suffers a second injury, which when combined with the effect of a prior injury results in permanent total disability, and both injuries occurred while the claimant worked for the same employer, the employer is chargeable for the compensation resulting from the second injury and the second injury fund is chargeable for the remainder due the claimant.

■ We therefore grant the petitioner's request for a permanent total disability award from the second injury fund. The employee, Owens–Illinois, Inc. shall be responsible for 35% of this life award, with the remainder to come from the second injury reserve fund.

Writ granted.