429 S.E.2d 44

Danny LYONS, Terry Gibson, Arla Sue Betts, Thena Maynard, Laurence Mayes, Ronald L. Stewart, Bruce Perry, and Bill Fitzpatrick, Petitioners,

v.

Andrew N. RICHARDSON, Workers' Compensation Commissioner, and Robert J. Smith, Chief Administrative Law Judge, Respondents.

No. 21454.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 2, 1993.

Decided March 16, 1993.

Charles W. Ellis, Huntington, for petitioners.

Robert M. Nunley, Asst. Atty. Gen., Charleston, for respondent Andrew N. Richardson, Workers' Compensation Com'r.

Samuel P. Cook, Sr. Asst. Atty. Gen., Charleston, for respondent Robert J. Smith, Chief Administrative Law Judge.

MILLER, Justice:

The petitioners in this case are eight claimants seeking second injury life awards (SILA) or permanent total disability (PTD) awards from the respondents, the Commissioner of the State Workers' Compensation Fund (Commissioner) and Chief Administrative Law Judge (Chief ALJ) of the State Workers' Compensation Office of Judges. The petitioners have brought this original proceeding in mandamus requesting that we compel the respondents to issue orders granting PTD status in each of their claims. The petitioners also ask that the respondents be ordered to pay their reasonable attorney's fees, costs, and expenses incurred in this proceeding.

## I.

Each of the eight petitioners is a claimant seeking benefits from the State Workers' Compensation Fund. Each of the petitioners has, in the course of litigating various claims for benefits, made motions for PTD status before the Workers' Compensation Office of Judges. In each case, once a motion for PTD had been made, the Office of Judges ceased action on the prior litigation, holding that portion of the claim in abeyance, and remanded the claim to the Commissioner solely for a determination on the PTD motion.

Upon remand of the claims by the Office of Judges, the Commissioner denied each of the petitioners' PTD motions, without elaboration on the facts of the claim. Thereafter, each petitioner protested the Commissioner's denial of PTD status to the Office of Judges. These protests occurred between April and August of 1992. The Office of Judges had not rendered final appealable orders in any of the PTD claims as of September 17, 1992, the date of the petitioners' initiation of mandamus proceedings in this Court.

The petitioners initiated this extraordinary proceeding because of their belief that they have been "subjected to the same unduly burdensome and inefficient Workers' Compensation litigation process which has prevailed in West Virginia for so many years." The petitioners also assert that they have a right to PTD awards on the merits of their claims, and that mandamus is an appropriate proceeding to determine the merits of their PTD claims. The petitioners encourage us to "closely review the procedural handling of these work-related injury claims by the Workers' Compensation Fund (Commissioner and Office of Judges) and to decline to accept the inefficient handling of such claims[.]"

On November 4, 1992, we issued a rule to show cause against the respondents. This rule was not issued to examine the merits of the petitioners' PTD claims, but rather to determine whether the respondents were performing their legal duties as required by W.Va.Code, 23–5–1, et seq. We note that in 1990 the West Virginia legislature amended W.Va.Code, 23–5–1, et seq., and fundamentally altered the workers' compensation protest and hearing procedures. Because we have had no prior occasion to examine the new procedures, we formulated a series of ten questions to be answered by the parties to this action, and also solicited other interested counsel to offer briefs *amicus curiae* in response to those questions.

## II.

It is commonly accepted that the protest and hearing procedures utilized by the State Workers' Compensation Fund prior to the 1990 amendments to W.Va.Code, 23–5–1, *et seq.*, created a litigatory nightmare. Protested claims were known to flounder for years in a sea of delays, continuances, and sheer inefficiency.[1] We are informed that a major problem of the earlier system was that the hearing examiners who conducted evidentiary hearings were not full-time employees.

---

1. *See, e.g., Spurlock v. Spieler,* 183 W.Va. 296, 395 S.E.2d 540 (1990); *Nelson v. Merritt,* 176 W.Va. 485, 345 S.E.2d 785 (1985); *Scites v. Huff-* *man,* 174 W.Va. 191, 324 S.E.2d 152 (1984); *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983).

Another critical problem was that some employers who had ceased doing business or who had gone into bankruptcy were not represented in the claims process. Consequently, where the claimant was seeking a substantial award, such as PTD or SILA, there would be an inadequate defense raised against these awards. Moreover, in SILA claims, because the employer, under the second-injury statute, W.Va.Code, 23-3-1, is charged only with the amount of disability created by the last injury, the employer would often acquiesce in the SILA where the last injury constituted a small percentage of the claimant's overall disability. This would result in the Second Injury Fund bearing the major portion of the SILA.[2]

For the foregoing reasons, the legislature in 1990 made significant changes to the workers' compensation procedural system.[3] These changes became effective on July 1, 1991.[4] The 1990 amendments created the positions of full-time administrative law judges (ALJ). The ALJs are supervised by a Chief Administrative Law Judge (Chief ALJ). W.Va.Code, 23-5-1g. Moreover, the handling of evidentiary hearings, formerly controlled by the Commissioner, is now controlled by an ALJ in accordance with the time standards set forth in W.Va. Code, 23-5-1h.

Thus, the Commissioner's role under the new system contained in W.Va. Code, 23-5-1 (1990), is essentially one of fact gathering from the preliminary forms filed, the medical reports submitted by the parties, and independent physical examinations ordered by the Commissioner under W.Va.Code, 23-4-8 (1990).[5] The Commissioner makes rulings with regard to the benefits sought by a claimant or to the employer's challenges to benefits. If a party objects to these rulings, the matter is referred to the Office of Judges for an evidentiary hearing and an ultimate ruling by an ALJ.

Perhaps the most novel change to the compensation litigation scheme involves claims for a SILA or PTD award, that are now controlled by W.Va.Code, 23-5-1j. This section comes into play after a party has objected to the initial decision of the Commissioner in a claim where a SILA or PTD award is sought. Under W.Va.Code, 23-5-1 (1990), once the Commissioner has ruled, and either party objects, the objection is filed with the Office of Judges and is processed there.[6] The ALJ is then authorized under W.Va.Code, 23-5-1j(a)[7] to

2. Almost twenty years ago in *Cline v. State Workmen's Compensation Commissioner*, 156 W.Va. 647, 652, 196 S.E.2d 296, 299 (1973), we recognized this problem and urged the Commissioner to become involved in SILA cases:

"[I]n cases resulting in a life award from the 'second injury' reserve under *Code*, 1931, 23-3-1, as amended, the real adversary party is not the employer who is chargeable only for permanent partial ratings. It is the Workers' Compensation Fund which must bear the burden of payment of the total and permanent disability award. Under the statutory scheme ... it would seem appropriate for the Fund to be represented by its counsel or by the Office of the Attorney General."

From this writer's experience on this Court since January 1, 1977, the Commissioner has never sought counsel in any SILA cases appealed to this Court either before or after the adoption of W.Va.Code, 23-5-1 (1990).

3. For a comprehensive examination of the workers' compensation system and its goals and objectives, both past and present, see Emily A. Spieler, *Injured Workers, Workers' Compensation, and Work: New Perspectives on the Work-*

*ers' Compensation Debate in West Virginia*, 95 W.Va.L.Rev. 333 (1993).

4. *See* 1990 W.Va. Acts ch. 12 (2d Ex.Sess.).

5. *See* note 8, *infra*.

6. W.Va.Code, 23-5-1 (1990), in relevant part, states:

"All objections to commissioner's decisions which are not appealable to the appeal board and which are filed on or after the first day of July, one thousand nine hundred ninety-one, shall be filed with the office of judges in accordance with the procedures set forth in section one-g and section one-h [§ 23-5-1g and § 23-5-1h] of this article."

7. W.Va.Code, 23-5-1j(a), states, in part:

"If, following an objection to any decision of the commissioner, any party to a claim pending before the office of judges requests that a claimant be awarded a permanent total disability award or a second injury life award or if the administrative law judge on his or her own motion believes that the record is incomplete on the issue of whether a claimant should be issued a permanent total disability

remand the matter to the Commissioner, who then has 120 days to develop additional information[8] and determine whether to grant such an award.

Furthermore, W.Va.Code, 23–5–1j(b), provides, that the protested decision must remain in effect during the remand proceedings before the Commissioner, and all action on the protest before the Office of Judges must be held in abeyance until the Commissioner renders a decision on the SILA or PTD motion within the 120–day period. If any party objects to the Commissioner's decision on the SILA or PTD motion upon remand, then pursuant to W.Va.Code, 23–5–1j(b), that objection must be made to the Office of Judges and must be "made part of the proceedings on the first objection."[9]

Having in mind the purpose of W.Va. Code, 23–5–1j (1990), we cannot avoid commenting on one paramount problem which none of the parties nor the *amicus curiae* discuss. Under the prior procedural system where the Commissioner handled the protest hearings through hearing examiners, notice of a SILA claim would often occur at some evidentiary hearing when the claimant would move for a SILA and ask that his prior injuries be cross-indexed into his present claim so that they could be considered in the second-injury evaluation. *See, e.g., Young v. Workers' Compensa-*

*tion Commissioner,* 181 W.Va. 440, 442, 383 S.E.2d 72, 74 (1989): "It was not until the claimant moved for a second injury evaluation, and the medical and vocational experts began to evaluate his total impairment based upon all of his prior injuries, that the permanent total disability became apparent." *Miracle v. Workers' Compensation Comm'r,* 181 W.Va. 443, 444, 383 S.E.2d 75, 76 (1989) ("It was not until a hearing on October 30, 1986, that the claimant's attorney advised that he would move for second injury development[.]").

Under the new procedure, the Commissioner does not conduct hearings. The process before the Commissioner is now essentially a gathering of medical information by the parties and through the Commissioner's independent examination. We are aware of no regulation or forms requiring a claimant to identify that a SILA or PTD award is being sought at the Commissioner's level. If such a procedure existed, it would adequately alert the Commissioner and the employer so that a cross-indexing of the claimant's other claims could occur and relevant medical examinations could be obtained on the SILA or PTD issue.[10] Moreover, the Commissioner would be informed so that counsel could be obtained to protect the Workers' Compensation Fund. If such notification is not required at some

award or a second injury life award, then the administrative law judge shall enter an order remanding the claim to the commissioner.... The commissioner shall act upon any matter remanded to him or her pursuant to this section in a speedy and timely manner and in no event longer than one hundred twenty days."

**8.** The Commissioner has the right to order independent medical examinations, as authorized by W.Va.Code, 23–4–8 (1990), and its predecessor, W.Va.Code, 23–4–8 (1975). In *Dalton v. Spieler,* 184 W.Va. 471, 401 S.E.2d 216 (1990), we discussed the relationship between W.Va.Code, 23–4–8, and W.Va.Code, 23–4–7a.

**9.** W.Va.Code, 23–5–1j(b) (1990), provides:

"During the pendency of the remand proceedings before the commissioner, the original decision from which the objection was taken shall remain in effect and action on the protest held in abeyance pending the commissioner's action on the remand order. Upon

the entry of a decision on the issue of whether a permanent total disability award or a second injury life award is to be made, the claim shall be returned to the office of judges for such further proceedings as may be required on that first objection. If a further objection is made pursuant to subsection (a) of this section to the commissioner's decision on the issue of whether a permanent total disability award or a second injury life award is to be made, then such proceedings on such objection shall be made part of the proceedings on the first objection."

**10.** In *Miracle v. State Workers' Compensation Commissioner,* 181 W.Va. at 446, 383 S.E.2d at 78, we pointed out the obvious problem that is caused when notice of a SILA motion was not given to the Commissioner: "The second injury statute, which permits prior impairments to be considered in the permanent disability calculus, adds another dimension. In this area, further problems arise because physicians frequently evaluate only the second injury and ignore the residual disability from prior injuries."

initial stage before the Commissioner, it is almost certain that the claim will not be sufficiently developed so that the Commissioner may make an informed judgment as to a SILA or PTD award. When a claim is inadequately developed, it must then pass through the convoluted procedures under W.Va.Code, 23–5–1j(a).

We note that the Commissioner has the authority and the duty under W.Va.Code, 23–1–13 (1923),[11] to adopt rules of procedure, as well as forms relating to workers' compensation benefits under W.Va.Code, 23–1–14 (1991).[12] We hope this deficiency will be corrected.[13]

### III.

■ We next address the several claims raised. The petitioners appear to have abandoned their original assertion that an ALJ is not, in certain circumstances, warranted in remanding a SILA or PTD claim brought pursuant to a claimant's objection to the Commissioner's failure to grant such an award. It was the petitioners' position that if a claimant's medical and vocational evidence show entitlement to a SILA or PTD award, the ALJ should grant such an award. As we have earlier pointed out, one of the primary purposes of W.Va.Code, 23–5–1j, is to enable the Commissioner, through counsel, to protect against SILA or PTD awards where the employer has not appeared or is willing to concede a SILA

because the employer's share of liability for the award is very minor.

■ The language of W.Va.Code, 23–5–1j(a), is clear. It enables the Office of Judges to remand a claim for a SILA or PTD award to the Commissioner if such a claim is first asserted before the Office of Judges or if an ALJ, in reviewing the claim, finds the record incomplete on the issue of whether such an award should be given.[14] The relevant text states that, if "any party to a claim pending before the office of judges requests ... a permanent total disability award or a second injury life award or if ... the record is incomplete on the issue ... [an order shall be entered] ... remanding the claim to the commissioner."

However, we do not interpret this section to automatically require a remand in all instances. Certainly, where the Commissioner has granted a claimant a SILA or PTD award and the medical and vocational reports are fully developed by both the claimant and the employer, and the employer objects to the award, the claim should not be remanded by the ALJ. It should proceed to evidentiary hearings on the employer's objection before the ALJ.

Moreover, if a SILA or PTD claim were fully developed by both the claimant and the employer, with the employer opposing such an award, and the Commissioner rejects such an award and the claimant pro-

11. W.Va.Code, 23–1–13 (1923), provides:
   "The commissioner shall adopt reasonable and proper rules of procedure, regulate and provide for the kind and character of notices, and the service thereof, in cases of accident and injury to employees, the nature and extent of the proofs and evidence, the method of taking and furnishing the same to establish the rights to benefits or compensation from the fund hereinafter provided for, or directly from employers as hereinafter provided, as the case may require, and the method of making investigations, physical examinations and inspections, and prescribe the time within which adjudications and awards shall be made."

12. W.Va.Code, 23–1–14 (1991), states:
   "The commissioner shall prepare and furnish free of cost blank forms (and provide in his rules for their distribution so that the

same may be readily available) of applications for benefits for compensation from the workers' compensation fund, or directly from employers, as the case may be, notices to employers, proofs of injury or death, of medical attendance, of employment and wage earnings, and such other blanks as may be deemed proper and advisable, and it shall be the duty of employers to constantly keep on hand a sufficient supply of such blanks."
   It is substantially similar to its predecessor.

13. In Part III(C), we point out other mandatory rule-making authority directed at the Chief ALJ. For reasons discussed in that section, we decline to enter a mandamus to require promulgation of such rules. The same reasons apply here.

14. For the applicable text of W.Va.Code, 23–5–1j(a), see note 7, *supra.*

tests, the matter should be heard by the ALJ.

On the other hand, clear grounds for remand would exist under W.Va.Code, 23-5-1j, (1) where a claimant objects to the Commissioner's ruling and then, for the first time, raises a claim for a SILA or PTD award before the Office of Judges, or (2) where the Commissioner rejects a SILA or PTD motion and the record is incomplete because the employer did not appear or did not object to a SILA.

■ While the foregoing examples are not designed to cover every factual situation, it bears emphasizing that W.Va.Code, 23-5-1j, is not designed to require that every SILA or PTD claim that comes from the Commissioner on an objection must automatically be remanded to the Commissioner. If the legislature intended this result, it could easily have changed the first sentence of W.Va.Code, 23-5-1j to read: "Following an objection to any decision of the commissioner where permanent total disability or second injury life award is sought, the administrative law judge shall enter an order remanding the claim to the commissioner."

Because we find that W.Va.Code, 23-5-1j, gives discretion to the Office of Judges to remand SILA and PTD claims to the Commissioner, we decline to issue a mandamus on this portion of the petitioners' claim.

## IV.

### A.

■ The petitioners assert, and it is apparently not denied, that the ALJ does not meet the time requirement that an order be entered within thirty days after the final hearing. W.Va.Code, 23-5-1h, provides that an ALJ "shall, within thirty days after final hearing, render a decision affirming,

reversing or modifying the commissioner's action," and that "[s]aid decision shall contain findings of fact and conclusions of law and shall be mailed to all interested parties." [15]

There can be little question that under our decision in *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983), this is a mandatory duty, and, while the particular Code provisions in *Meadows* were different, Syllabus Points 5 and 6 still provide mandatory time periods for making a decision:

"5. The workers' compensation commissioner must act on workers' compensation claims within the statutorily prescribed time limits found in W.Va.Code §§ 23-4-1c, 23-4-16, and 23-5-1 (1981 Replacement Vol.).

"6. The commissioner is required by W.Va.Code § 23-1-13 (1981 Replacement Vol.) to promulgate regulations specifying, *inter alia,* internal procedural time limits through which adjudications and awards are made."

*See also Scites v. Huffman,* 174 W.Va. 191, 324 S.E.2d 152 (1984).

Although the petitioners make the general assertion that final orders are being delayed beyond the thirty-day period prescribed in W.Va.Code, 23-5-1h, we do not find that there has been a final hearing held in their claims before the ALJ. The thirty-day provision is not triggered until the final hearing is held. Thus, we are unable to grant a mandamus on this ground.

### B.

The petitioners also assert that the Office of Judges does not follow the time standards set out in W.Va.Code, 23-5-1h, which states, in relevant part:

"Upon receipt of an objection, the office of judges *shall, within fifteen days from*

---

**15.** The relevant portion of W.Va.Code, 23-5-1h, is:

"All hearings shall be conducted as determined by the chief administrative law judge pursuant to the rules of practice and procedure promulgated pursuant to section one-g [§ 23-5-1g] of this article. Upon consideration of the entire record, the chief adminis-

trative law judge or an administrative law judge within the office of judges *shall, within thirty days after final hearing,* render a decision affirming, reversing or modifying the commissioner's action. Said decision shall contain findings of fact and conclusions of law and shall be mailed to all interested parties." (Emphasis added).

receipt thereof, set a time and place for the hearing of evidence and shall notify the commissioner of the filing of the objection. . . .

"The employer, the claimant and the commissioner *shall* be notified of such hearing *at least ten days in advance,* and the hearing *shall be held within thirty days* after the filing of the objection unless such hearing be postponed by agreement of the parties or by the chief administrative law judge or such authorized representative for good cause." (Emphasis added).

Apparently, the Office of Judges at the direction of the Chief ALJ has adopted the practice of issuing "Automatic Time Frame Orders" in lieu of holding the initial hearing mandated by W.Va.Code, 23–5–1h, within thirty days of the filing of the objection to the Commissioner's ruling. *See also* 7 W.Va.C.S.R. § 93–1–2.9(a–b) (effective May 4, 1992).[16] Each Automatic Time Frame Order has a provision allowing a party to object to the order within ten days of its issuance. Each Automatic Time Frame Order further states: "If neither party objects to [the] time frame order in a timely manner, then the terms of [the time frame] order shall take effect automatically, and the acceptance of this order shall constitute a waiver of the initial hearing in this claim." [17]

The petitioners assert that the Automatic Time Frame Orders issued by the Chief ALJ are invariably issued after a lengthy delay. As illustrative of the point, they attached to their supplemental brief several time frame orders. Typical of the problem is petitioner Terry Gibson's claim, where the case was remanded to the Commissioner under W.Va.Code, 23–5–1j, on December 10, 1991. The Commissioner denied PTD on April 17, 1992. The matter was then referred back to the Office of Judges on the petitioner's protest. The Chief ALJ's Automatic Time Frame Order, was entered January 11, 1993. It lists a number of other protests made in Mr. Gibson's case that were combined for evidentiary hearings.[18] We are not informed, and we are at a loss to understand, how the PTD ruling becomes so fragmented at the Commissioner's level resulting in the inclusion of various orders.

A more extreme example of time delay and fragmentation is reflected in the Automatic Time Frame Order in petitioner

---

**16.** The decision not to hold initial hearings is virtually confirmed by the Chief ALJ's procedural rule contained in 7 W.Va.C.S.R. § 93–1–2.9(a), which states, in relevant part:

"Scheduling of Hearings.

"(a) First Hearing. The first hearing shall be scheduled in accordance with W.Va.Code § 23–5–1h and Sections 2.4 and 2.5 of these Rules. Whenever possible the introduction of evidence should be completed at the first hearing and the claim should be submitted for decision. It is recognized that in most claims such a process is not possible. Accordingly, the ordinary use of the first hearing shall be for the purpose of addressing evidentiary matters, simplification of issues, discussion of settlement, where appropriate, the setting of time frames within which the claim may be timely and fairly processed. . . . Any Time Frame Order issued shall be interlocutory in nature[.]"

**17.** The contents of a time frame order are covered in 7 W.Va.C.S.R. § 93–1–2.9(b), which, in material part, provides:

"Time Frame Order. The Time Frame Order will ordinarily set forth the issues in litigation, a date by which each party must submit reports from expert witnesses, the date on which a hearing will be conducted to examine or cross-examine the claimant and other lay witnesses, a time frame within which the claimant's treating physician or the Commissioner's examining physician may be cross-examined, a date by which all motions must be made and such other matters as may be appropriate depending on the case."

**18.** The relevant portion of the Gibson time frame order is:

"The issues in litigation to be decided in this action are:

"(a) The claimant's protest to the Commissioner's Order of April 17, 1992, denying request for permanent total disability award.

"(b) The claimant's protest to the Commissioner's Order of July 21, 1992, granting a 5% permanent partial disability award in addition to a 15% award.

"(c) The claimant's protest to the Commissioner's Order of September 3, 1992, closing the claim.

"(d) The claimant's protest to the Commissioner's Order of September 17, 1992, denying reopening.

"(e) The claimant's protest to the Commissioner's Order of November 4, 1992, closing the claim."

Bruce Perry's case.[19] Mr. Perry's claim relates to a 1986 injury and is still in the system awaiting hearings before an ALJ with a time frame order entered on January 5, 1993. It allows consecutive development of the claim until January 25, 1994, "subject to possible rescheduling."[20]

The claims of both Mr. Gibson and Mr. Perry involve a PTD award issue. However, even in those claims where there is only a modest amount of permanent partial disability at issue, there is no expeditious resolution of the matter. This is illustrated by petitioner Bill Fitzpatrick's time frame order which was entered on April 28, 1992. It dealt with the claimant's protest to the Commissioner's January 17, 1991 order granting an 8 percent permanent partial disability award.[21] This time frame order permits consecutive development of the claim by the parties ending July 1, 1993, unless extended. Thus, some fourteen months are consumed under the time frame order. On top of this, if we accept the protest to the Commissioner's order as being in July of 1991, the entry of the time frame order on April 28, 1992, was ten months after entry of the Commissioner's order and was well beyond the limits contained in W.Va.Code, 23–5–1h. There may be some valid explanation of this byzantine procedure, but it has not emerged in any of the respondents' briefs.

This case serves to demonstrate that the new system appears to be operated no more efficiently than the old. Moreover, the inordinate delays in processing claims obviously insulate the Workers' Compensation Fund from any threat that it will be

19. The relevant portion of the Perry Automatic Time Frame Order is:

"The issues in litigation to be decided in this action are:

"(a) The employer's protest to pay order #0520274, payable to Huntington Hospital in the amount of $1,455.00.

"(b) The claimant's & employer's protest to the Commissioner's Order of July 14, 1986, granting a 5% award.

"(c) The claimant's protest to the Commissioner's Order of May 2, 1989, denying reopening.

"(d) The claimant's protest to the Commissioner's Order of May 19, 1989, denying change of physician.

"(e) The claimant's protest to the Commissioner's Order of May 25, 1989, denying reopening.

"(f) The claimant's protest to the Commissioner's Order of May 31, 1989, denying request for CT scan and myelogram.

"(g) The claimant's protest to the Commissioner's Order of September 6, 1989, closing the claim.

"(h) The claimant's protest to the Commissioner's Order of May 2, 1990, closing the claim.

"(i) The claimant's protest to the Commissioner's Order date of May 30, 1990, granting an additional 5% permanent partial disability award.

"(j) The claimant's protest to the Commissioner's Order of July 21, 1992, denying request for permanent total disability award."

20. The applicable portion of Mr. Perry's Automatic Time Frame Order is:

"As to the claimant's and employer's protest to the Commissioner's Order of July 14, 1986 & the claimant's protest to the Commissioner's Orders of May 30, 1990 & July 21, 1992, all of the protesting party's evidence on this issue must be introduced no later than May 25, 1993. The protesting party's witnesses, as well as the Commissioner's medical examiner(s) and the claimant's treating and examining physician(s), must be cross-examined no later than January 25, 1994, subject to possible rescheduling. The responding party's evidence must be introduced no later than November 25, 1993. The responding party's witnesses must be cross-examined no later than January 25, 1994. Any further hearings for the examination or cross-examination of witnesses, if needed, must be requested by a party in writing prior to the expiration of the applicable deadlines set forth above."

21. As usual, Mr. Fitzpatrick's Automatic Time Frame Order deals with collateral issues which were:

"The issues in litigation to be decided in this action are:

"a. Claimant's protest to the Commissioner's Order of January 17, 1991, granting the claimant an 8% permanent partial disability award.

"b. Claimant's protest to the Commissioner's Order of April 19, 1991, denying request for claimant's referral to Logan–Mingo Area Mental Health Center.

"c. Claimant's protest to the Commissioner's Order of May 6, 1991, denying request for claimant's referral to Dr. Robert Lowe.

"d. Claimant's protest to the Commissioner's Order of May 24, 1991, denying reopening of the claim.

"e. Claimant's protest to the Commissioner's Order of June 12, 1991, denying payment for certain medication."

forced to pay all claims at one time.[22] We decline, however, to issue a mandamus on the time frame order procedure simply because the petitioners have not challenged its use as being inconsistent with the hearing procedures prescribed under W.Va. Code, 23–5–1h.

**C.**

Finally, we note that the Chief ALJ asserts that under his rule-making powers, he is developing time frame guidelines keyed to the various classes of claims involved in hearings before the Office of Judges.[23] We can only state that these time frames

---

**22.** That the Workers' Compensation Fund will not be forced to pay all claims at once is obviously contrary to the thesis advanced by the officials of the Workers' Compensation Fund, as illustrated by the March 4, 1993, article on page 3A of *The Charleston Gazette:*

**REVISION OF WORKERS COMP PROPOSED**

"Legislation will be introduced this session to improve the state Workers Compensation Fund, an official said Thursday.

"The fund makes payments to people injured on the job. The fund has a $1.2 billion unfunded liability, which is how much the state would be short if all claims were to come due at once, said Andrew Richardson, commissioner of the state Bureau of Employment Programs.

"'We're going to need to invest in the system. It's like anything else. You have to spend money to fix it,' Richardson said.

"Last year, the fund collected $22.5 million more than it paid out, Richardson said.

"But total permanent disability payments continue to cripple the fund."

It is interesting to note that the 1992 West Virginia Research League Statistical Handbook states, based on information from the Workers' Compensation Fund, that at the end of fiscal year 1991–92, the Fund had a balance in investments and cash on hand of $822,525,000.

**23.** The following are several categories of time standard guidelines which were attached to the Chief ALJ's brief:

"SUGGESTED [TIME FRAME ORDER] GUIDELINES

| MONTHS * * * | ISSUE/PROTEST * * * | TIME FRAME * * * |
|---|---|---|
| 6–6–1 | OP Non–Meds | 6 months consecutive; plus 1 month cross-examination at the end for the protesting party (6–6–1) |
| 6–6–1 | Dependents Benefits (Fatals) | 6 months consecutive; plus 1 month cross-examination at the end for the protesting party (6–6–1) |
| 3–3 | Dependents Benefits (104 weeks) | 3 months consecutive (3–3) |
| 6–6–2 | PPD Awards | 6 months consecutive; plus 2 months cross-examination at the end for the protesting party (6–6–2) |
| 6–6–2 | PTD/SILA (after Remand and return to [Office of Administrative Law Judges]) | 6 months consecutive; plus 2 months cross-examination at the end for the protesting party (6–6–2) |

are longer than we have set out in our time schedules for circuit courts where the issues are more complex. In the vast majority of compensation cases, there is no liability issue since the right to compensation accrues as a result of an injury arising out of the workplace. Negligence or fault of the parties is not an issue in compensation claims, whereas in a civil case, this is often the key and most complicated issue. These generous time frames are inconsistent with one of the avowed purposes of the Workers' Compensation Act, as set out in Syllabus Point 1 of *Workman v. State Workmen's Compensation Comm'r*, 160 W.Va. 656, 236 S.E.2d 236 (1977):

"Long delays in processing claims for [workers'] compensation is not consistent with the declared policy of the Legislature to determine the rights of claimants as speedily and expeditiously as possible. W.Va.Code, 23-5-3a."

*See also* Syllabus Point 2, *Boggs v. Richardson*, 187 W.Va. 318, 418 S.E.2d 764 (1992); Syllabus Point 3, *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983).

It would seem to us that by the time the claim has reached the hearing level before an ALJ, its issues should be developed reasonably enough for the ALJ to comprehend them. A telephone conference call to the attorneys [24] should be sufficient to narrow the issues and determine what witnesses will be used. As in any case, both parties should develop their cases concurrently rather than consecutively, as the time frame order permits. Moreover, there is a need for intervention by the ALJ at an early stage in order to encourage settlement of permanent partial disability cases, as permitted under W.Va.Code, 23-5-1f.

Under the current procedure, the time frame order is entered automatically, and, unless there is an objection, nothing more is done with the claim until the time frame expires. One cannot help but believe that this procedure is designed to accommodate the attorneys rather than to promptly dispose of the claim. This is contrary to any theory of case management which stresses that the judges must control the docket rather than the attorneys.[25] One can only sense that unless the ALJs become more active in handling the claims before them, the system is again doomed to fail in terms of the efficiency in which claims are handled.[26]

## V.

*Workman*'s policy against long delays compels us to be equally critical of the Chief ALJ's failure to hire a sufficient number of ALJs to reduce the backlog of claims. Under W.Va.Code, 23-5-1g(c), "with consent of the commissioner, the chief administrative law judge *shall* employ such additional administrative law judges and other personnel as are necessary for the proper conduct of a system of administrative review[.]" The Chief ALJ in his affidavit before this Court states that "[i]nitially eighteen judges were hired. Four of those have left seeking other employment. We are now in the process of hiring nine additional judges." (Affidavit, p. 6). The word "shall" imparts a mandatory duty to obtain sufficient personnel to efficiently operate the system, similar to the mandate discussed in *Allen v. State, Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984).

This same mandatory duty exists with regard to W.Va.Code, 23-5-1g(f), which re-

24. The files of the cases reaching this Court on appeal reflect that the great majority of claimants have counsel at the ALJ level.

25. Section 2.50 of the American Bar Association's *Standards Relating to Court Delay Reduction* states that "the court, not the lawyers or litigants, should control the pace of litigation."

26. The writer of this opinion is compelled to make another personal observation: The workers' compensation system encourages delays simply because payouts from the Fund are likewise delayed.

quires the Chief ALJ to "establish a procedure for the hearing of disputed claims, take oaths, examine witnesses...." [27] It does not appear that these rules and procedures have been adopted even though the new system has been in existence for more than twenty months. When we consider that these provisions were adopted on July 1, 1990, but not made effective until July 1, 1991, the delay is thirty-two months. The petitioners have not asked us to require the Commissioner or the Chief ALJ to adopt rules of procedure. Therefore, we decline at this time to issue a rule in mandamus compelling the Chief ALJ and the Commissioner to fulfill their mandatory duty and promulgate rules, as we have done in other cases. *See, e.g., Nelson v. Merritt,* 176 W.Va. 485, 345 S.E.2d 785 (1985); Syllabus Point 9, *Allen v. State, Human Rights Comm'n, supra;* Syllabus Point 8, *United Mine Workers of America v. Scott,* 173 W.Va. 356, 315 S.E.2d 614 (1984); Syllabus Point 6, *Meadows v. Lewis, supra.*

## VI.

■ In summary, we find that the petitioners' main complaint regarding the ALJ remand under W.Va.Code, 23–5–1j, is not reachable through mandamus, as it involves a matter of discretion. Our traditional rule in a mandamus against a public official is contained in the Syllabus of *Ney v. West Virginia Workers' Compensation Fund,* 186 W.Va. 180, 411 S.E.2d 699 (1991):

" ' "Mandamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, but it is never employed to prescribe in what manner they shall act, or to correct errors they have made." Syl. pt. 1, *State ex rel. Buxton v. O'Brien,* 97 W.Va. 343, 125 S.E. 154 (1924).' Syl. pt. 2, *State ex rel. Lambert v. Cortellessi,* 182 W.Va. 142, 386 S.E.2d 640 (1989)."

■ Petitioners are not entitled to relief on mandamus with regard to the failure of the ALJ to comply with the thirty-day time period for a decision after the final hearing under W.Va.Code, 23–5–1h. This is because there has been no final hearing held in their claims.

Although we have expressed our concern about the Automatic Time Frame Order procedure and the lack of procedural rules, the petitioners do not seek relief in this area. Furthermore, we are not presented with a sufficiently developed factual record to determine the extent of the deficiencies.

For all of the foregoing reasons, we decline to award a writ of mandamus. Based upon this determination, we award no attorney's fees or costs.

Writ denied.

---

**27.** W.Va.Code, 23–5–1g(f), provides:

"On and after the first day of July, one thousand nine hundred ninety-one, the chief administrative law judge shall have the power, which shall be delegated by the appeal board, to hear and determine all disputed claims in accordance with the provisions of this article, establish a procedure for the hearing of disputed claims, take oaths, examine witnesses, issue subpoenas, establish the amount of witness fees, keep such records and make such reports as are necessary for disputed claims, review and approve agreements to compromise and settle claims involving permanent partial disability awards permitted by the provisions of section one-f [§ 23–5–1f], article five of this chapter, and exercise such additional powers, including the delegation of such powers to administrative law judges or hearing examiners as may be necessary for the proper conduct of a system of administrative review of disputed claims."