442 S.E.2d 712

Janet THOMPSON, Kenneth Thompson
and Vera Thompson Treadway,
Petitioners Below, Appellants,

v.

WEST VIRGINIA BOARD OF OSTEOPA-
THY; Paul Kleman, D.O., President,
West Virginia Board of Osteopathy; and
Joseph E. Schreiber, D.O., Secretary,
West Virginia Board of Osteopathy, Re-
spondents Below, Appellees.

No. 21720.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 25, 1994.

Decided March 24, 1994.

Rudolph L. DiTrapano, Joshua I. Barrett, DiTrapano & Jackson, Charleston, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., Claude S. Smith, III, Scott E. Johnson, Asst. Attys. Gen., Charleston, for appellees.

PER CURIAM:

Janet Thompson, Kenneth Thompson and Vera Thompson Treadway (hereinafter the Thompsons) appeal the circuit court's dismissal of their petition for a writ of mandamus to compel the West Virginia Board of Osteopathy to make findings of fact and conclusions of law and to pursue disciplinary action against Allen Gant, D.O. The Thompsons, all descendants of Modest Thompson, deceased, complained to the Board of Osteopathy that Dr. Gant caused Mr. Thompson's premature death by negligently administering the drug Methotrexate. The circuit court found that the Board of Osteopathy had discharged its non-discretionary duty when the Board dismissed the Thompsons' complaint. Although the Board of Osteopathy dismissed the Thompsons' complaint, the Board failed to make findings of fact and conclusions of law as required by *W.Va.Code* 30–14–12a [1986]. Because the Board of Osteopathy failed in its non-discretionary duty, we reverse the circuit court.

On April 23, 1986, Dr. Gant began treating Mr. Thompson, who was eighty-one years old, with a 25 mg. injection of Methotrexate. The Thompsons allege that the Methotrexate was to treat Mr. Thompson's osteoarthritis. According to the *Physician's Desk Reference*, 40 Ed., 1986, Methotrexate is a highly toxic drug generally used to treat cancer patients and can have the following side effects: ulcerative stomatitis, leukopenia, nausea and abdominal distress. The expert witness for the Thompsons, Peter Hasselbacher, M.D., a Board certified specialist in rheumatology and internal medicine, testified that Methotrexate has never been suggested for treating osteoarthritis, which, according Dr. Hasselbacher, was the decedent's form of arthritis.

Dr. Gant maintains that the drug was used to treat Mr. Thompson's rheumatoid arthritis, which he diagnosed on the basis of Mr. Thompson's symptoms. In 1986, Dr. Gant became aware of the benefits of Methotrexate by reading about various experimental studies involving rheumatoid arthritis. After informing Mr. Thompson of the possible benefits and side effects, Dr. Gant alleges that Mr. Thompson agreed to the treatment. On April 23, 1986, Dr. Gant began treating Mr. Thompson with a 25 mg. injection of the drug every couple of weeks until May 21, 1986, when Dr. Gant doubled the dosage to 50 mg., which was given three times, the last dosage given on July 28, 1986.

The Thompsons allege that the record does not corroborate Dr. Gant's diagnosis of rheumatoid arthritis and that the drug's dosage should not have increased in light of Mr. Thompson's adverse drug reaction as shown by his weight loss, penile infection, low white blood count and renal insufficiency. However, on May 21, 1986, Dr. Gant found Mr. Thompson to be free of pain and able to walk with his walker. Believing that the drug was reducing Mr. Thompson's joint effusion and

swelling, Dr. Gant doubled the drug's dosage.[1]

On July 30, 1986, two days after the last injection of Methotrexate, Mr. Thompson experienced chest pain. Suffering from a heart attack, Mr. Thompson was admitted to Raleigh General Hospital. The Thompsons allege that Dr. Gant failed to inform the hospital of Mr. Thompson's treatment with Methotrexate. Mr. Thompson's August 4, 1986 blood tests showed the presence of Methotrexate in the toxic range. According to Dr. Hasselbacher, this level of Methotrexate indicates an extraordinarily high exposure to the drug because normally the drug is eliminated from the system within a day or two.

On August 7, 1986, Mr. Thompson died. The decedent's postmortem examination found the cause of death to be "Coronary Thrombosis," "Hypertensive and Arteriosclerotic Cardiovascular Disease," and "CC: Chronic Obstructive Pulmonary Disease."

The microscopic examination noted that "[t]he [bone] marrow is relatively hypocellular."

Alleging that Dr. Gant's negligence hastened the decedent's death, Janet Thompson, as Mr. Thompson's personal representative filed a malpractice action in federal court which was settled for $250,000.[2] Thereafter, the Thompsons filed a complaint with the Board of Osteopathy. Apparently the Board considered the Thompsons' complaint four separate times and each time concluded that no malpractice had occurred. Aside from the conclusion, none of the Board's minutes contains any findings of fact and conclusions of law.[3] Although one meeting's minutes state that a full report was sent to the Attorney General's office, the record does not contain a copy of this report.

Alleging that the Board of Osteopathy failed in its duties (1) to make findings of fact and conclusions of law, and (2) to pursue

---

1. Mr. Thompson suffered from severe Diabetes with Diabetic Peripheral Vascular Disease, that required the amputation of his left leg above the knee. Mr. Thompson also suffered from Occupational Pneumoconiosis and Arteriosclerotic Heart Disease with Coronary Artery disease and Cor Pulmonale.

2. The pretrial order in *Thompson v. Hygeia Facilities Foundation, Inc. and Allen Gant, D.O.*, Civil Action No. 5:86–1338, U.S.D.C. (S.D.W.Va.1988), the malpractice case, states: "Defendant [Dr. Gant] will admit, to some unknown degree, that he deviated from the acceptable standard of care in his use of Methotrexate with Mr. Thompson." Dr. Gant's lawyer also read the following statement into the record: "Allen Gant, who is a physician in the State of West Virginia, admits negligence in the administration of methotrexate to Modest Thompson."

Dr. Gant maintains that his alleged admission of negligence was given without his permission by his lawyer. Because of the unauthorized admission, Dr. Gant filed a complaint against his lawyer with the Committee on Legal Ethics of the West Virginia State Bar, *Gant v. Moriarty*, No. 88–193 (1989). The Investigative Panel of the State Bar found that Dr. Gant had "vehemently resisted the entry of this admission into the record. Complainant [Dr. Gant] did, however, agree to a watered-down version of the admission. He was led to believe, by Respondent [Matthew Moriarty], that this admission could be confidential ... A transcript of the final settlement conference reveals that a statement admitting negligence on the part of Complainant was read into the record by the Respondent. Confidentiality was not provided for." The Investiga-

tive Panel found that once a conflict of interest developed between Dr. Gant and his insurance company, Mr. Moriarty "should have withdrawn from his representation of either insurer or insured or renegotiated the terms of the settlement." Although the Panel directed Bar Counsel to admonish Mr. Moriarty for his behavior, the Panel found this was an isolated incident and closed the matter without proceeding to a hearing.

3. The May 31, 1987 Board minutes state:

Dr. Gant—The Board discussed this matter in its entirety. The Board unanimously decided that there is no medical reason to revoke, suspend or in any way limit Dr. Gant's license. Letters will be sent to Dr. Gant and the Attorney General's office informing them of this decision.

The September 24, 1988 Board minutes state: Allen Gant, D.O. settled his case out of court. Action was taken by the board; it was determined no malpractice was evident.

The April 8, 1989 Board minutes state: Regarding Allen Gant, D.O. and the Thompson case, the board noted a full hearing was held on this matter at the last board meeting. They concluded no malpractice was committed; therefor, no action on his license was needed.

The September 22, 1989 Board minutes state: Regarding Allen Gant, D.O. and the Thompson case, the board noted a full report was submitted to the Attorney General's office. This outlined the conclusion that no malpractice was committed; therefor, no action on his license was needed.

disciplinary proceedings against Dr. Gant, the Thompsons petitioned circuit court for a writ of mandamus. In its answer, the Board of Osteopathy responded with "some of the information considered by the Board in reaching its decision" by listing thirteen factors and some subsequent information considered by the Board. After the circuit court refused to issue a writ of mandamus, the Thompsons appealed to this Court.

I

*W.Va.Code* 30–14–12a [1986] requires the Board of Osteopathy to make an initial determination concerning the existence of probable cause before deciding to take disciplinary action against any licensed osteopathic physician or surgeon. In addition to determining probable cause, the Board must make findings of fact and conclusions of law. *W.Va. Code* 30–14–12a(c) [1986], states:

In every case considered by the board under this article regarding suspension, revocation or issuance of a license whether initiated by the board or upon complaint or information from any person or organization, the board shall make a preliminary determination as to whether probable cause exists to substantiate charges of cause to suspend, revoke or refuse to issue a license as set forth in subsection (a), section eleven [§ 30–14–11(a) ] of this article. If such probable cause is found to exist, all proceedings on such charges shall be open to the public who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing, including the record of the final action taken: Provided, That any medical records, which were introduced at such hearing and which pertain to a person who has not expressly waived his right to the confidentiality of such records, shall not be open to the public nor is the public entitled to such records. If a finding is made that probable cause does not exist, the public has a right of access to the complaint or other document setting forth the charges, the findings of fact and conclusions supporting

such finding that probable cause does not exist, if the subject osteopathic physician consents to such access.

Our major case dealing with public access to medical disciplinary proceedings is *Daily Gazette Co., Inc. v. W. Va. Bd. of Medicine,* 177 W.Va. 316, 352 S.E.2d 66 (1986) (*Bd. of Medicine* ). In *Bd. of Medicine,* a newspaper sought information under the West Virginia's Freedom of Information Act, *W.Va. Code* 29B–1–1 [1977] *et seq.,* about physician disciplinary proceedings from the medical licensing board for physicians and podiatrists.[4] Based on our holding in *Daily Gazette Co., Inc. v. Committee on Legal Ethics of the West Virginia State Bar,* 174 W.Va. 359, 326 S.E.2d 705 (1984) (*State Bar* ) (recognizing a constitutional right of access to attorney disciplinary proceedings), we required the disclosure of information about physician disciplinary proceedings. In *Vest, supra* note 4, 138 W.Va. at 683, 76 S.E.2d at 898, we noted that "because Code, 30–3, and Code, 30–14, pertain to the same subject matter, namely the regulation of professions which deal with the public health, the statutes should be read in *pari materia,* unless the statutes exhibit an intent on the part of the Legislature that they should be separately construed. (Citations omitted.)"

In Syl. pt. 2, *Bd. of Medicine* we stated:

Under W.Va.Code, 30–3–14(*o*) (1986), if the West Virginia Board of Medicine finds that probable cause does not exist to substantiate charges of disciplinary disqualification, the public has a right of access to the complaint or other document setting forth the charges, and the findings of fact and conclusions of law supporting the dismissal.

*See* Syl. pt. 6, *State Bar* (recognizing a similar public "right of access to the complaint and the findings of fact and conclusions of law which are presented in support of such dismissal" for lack of probable cause).

In Syl. pt. 4, *State Bar* we held that: "Under West Virginia Constitution art. III,

---

4. There are separate systems for the licensing and regulation of the practice of physicians and surgeons (*W.Va.Code* 30–3–1 [1980] *et seq.*) and of osteopathic physicians and surgeons (*W.Va.Code* 30–14–1 [1951] *et seq.*) *See Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953).

§ 17, which provides that 'The courts of this State shall be open,' there is a right of public access to attorney disciplinary proceedings." We noted that "[t]his fundamental constitutional right of access is not limited to formal trials, but extends to other types of judicial and quasi-judicial proceedings. (Examples omitted.)" *State Bar*, 174 W.Va. at 364, 326 S.E.2d at 710–11.

Although *W.Va.Code* 30–14–12a(c) [1986] conditions public access to the complaint and the Board's findings of fact and conclusions of law only "if the subject osteopathic physician consents to such access," the statute's condition conflicts with *Bd. of Medicine* and *State Bar* and, therefore, cannot stand. In *Bd. of Medicine*, similar language was found too restrictive and that language was deleted by the 1989 amendment to *W.Va.Code* 30–3–14(o).[5]

Based on *Bd. of Medicine* and *State Bar*, we find that in this case even though the Board found that probable cause does not exist to substantiate charges of disciplinary disqualification, the Thompsons and the public have "a right of access to the complaint or other document setting forth the charges, and the findings of fact and conclusions of law supporting the dismissal." Syl. pt. 2, in part, *Bd. of Medicine.*

■ The Board maintains that a writ of mandamus is not necessary because their answer to the Thompsons' petition sets forth their findings of fact and conclusions of law. However, the Board's answer to the Thompsons' petition, no matter how detailed, does not fulfill the obligation of the Board to make and adopt formal findings of fact and conclusions of law. The Board's answer to the

petition was probably drafted by their lawyer and does not have the same force and effect as matters considered and formally adopted by the Board. The requirement of the Board's formal consideration and adoption of findings of fact and conclusions of law is a safeguard against arbitrary and capricious conduct. In order to avoid questions or the appearance of impropriety the Board should act in a formal way in this matter.

II

■ This Court has long recognized that the issuance of a writ of mandamus requires the coexistence of three elements. In Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969), we stated:

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

*In accord* Syl. pt. 3, *Parsons v. W. Va. Bureau of Emp. Programs*, 189 W.Va. 107, 428 S.E.2d 528 (1993); Syl. pt. 3, *Fisher v. City of Charleston*, 188 W.Va. 518, 425 S.E.2d 194 (1992); Syl. pt. 5, *Parks v. Bd. of Review of W.Va. Dept. of Employment Security*, 188 W.Va. 447, 425 S.E.2d 123 (1992).

■ In this case, we find that all three elements exist for a writ of mandamus to compel the Board to consider and adopt formal findings of fact and conclusions of law regarding the Thompsons' complaint. The Thompsons have clear legal right to the Board's findings of fact and conclusions of

---

5. In 1989, *W.Va.Code* 30–3–14(o) was amended by deleting the underlined portion:

In every case considered by the board under this article regarding discipline or licensure, whether initiated by the board or upon complaint or information from any person or organization, the board shall make a preliminary determination as to whether probable cause exists to substantiate charges of disqualification due to any reason set forth in subsection (c) of this section. If such probable cause is found to exist, all proceedings on such charges shall be open to the public who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing, includ-

ing the record of the final action taken: Provided, That any medical records, which were introduced at such hearing and which pertain to a person who has not expressly waived his right to the confidentiality of such records, shall not be open to the public nor is the public entitled to such records. *If a finding is made that probable cause does not exist, the public has a right of access to the complaint or other document setting forth the charges, the findings of fact and conclusions supporting such finding that probable cause does not exist, if the subject physician or podiatrist consents to such access.* Compare to *W.Va.Code* 30–14–12a(c) [1986] *supra*, p. 6.

law; the Board failed in its legal duty to consider and adopt formal findings of fact and conclusions of law; and, no other adequate remedy exists.

The Thompsons also seek to compel the Board to take disciplinary action against Dr. Gant. However, this part of the Thompsons' petition is not reachable through mandamus, because it involves a matter of discretion. Our traditional rule in mandamus was recently restated in Syl. pt. 6, *Lyons v. Richardson*, 189 W.Va. 157, 429 S.E.2d 44 (1993):

> " ' "Mandamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, but it is never employed to prescribe in what manner they shall act, or to correct errors they have made." Syl. pt. 1, *State ex rel. Buxton v. O'Brien*, 97 W.Va. 343, 125 S.E. 154 (1924).' Syl. pt. 2, *State ex rel. Lambert v. Cortellessi*, 182 W.Va. 142, 386 S.E.2d 640 (1989)." Syllabus, *Ney v. West Virginia Workers' Compensation Fund*, 186 W.Va. 180, 411 S.E.2d 699 (1991).

*W.Va.Code* 30–14–12a(c) [1986], provides that "the board shall make a preliminary determination as to whether probable cause exists to substantiate charges" and depending on the Board's determination of probable cause, the Code section provides different procedures. *See supra* p. 6. Given the disputed facts, we find that the Thompsons are not entitled to a writ of mandamus prescribing the Board's manner of action.

For the above stated reasons we affirm that part of the decision of the Circuit Court of Kanawha County that refused to direct the manner in which the Board of Osteopathy should act in this matter, but we reverse that part of the Circuit Court's decision that failed to require the Board of Osteopathy to adopt formal findings of fact and conclusions of law in this matter and we remand this case for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part and remanded.